UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                      :

*In re*                                   :     Chapter 11
                                                      :

Truvo USA LLC, *et al*.                :     Case No. 10-13513 (AJG)
                                                      :

                      Debtors.             :     Jointly Administered
                                                      :
------------------------------------------------------------------ X


**FINAL ORDER (A) AUTHORIZING THE USE OF CASH
COLLATERAL AND (B) GRANTING ADEQUATE PROTECTION
<u>TO THE PREPETITION SECURED LENDERS</u>**


        Upon consideration of the motion [D.I. 17] (the "<u>Motion</u>") of the above-captioned

debtors and debtors in possession[1] (the "<u>Debtors</u>") for entry of (i) an interim order (the

"<u>Interim Order</u>"): (a) authorizing the Debtors to use cash collateral; (b) providing adequate

protection to the Senior Lenders[2] with respect to any diminution in the value of their interests

in the Senior Lender Collateral pledged by the Debtors to secure the Senior Obligations; and

(c) scheduling a final hearing on the Motion (the "<u>Final Hearing</u>"); and (ii) a final order (the

"<u>Final Order</u>") (a) authorizing the Debtors to use cash collateral, and (b) granting the Senior

Lenders adequate protection with respect to any diminution in the value of their interests in

the Senior Lender Collateral pledged by the Debtors to secure the Senior Obligations, all as

more fully set forth in the Motion; and the Court having jurisdiction of the chapter 11 cases

(the "<u>Chapter 11 Cases</u>") and to consider the Motion and the relief requested therein pursuant

to 28 U.S.C. § 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges

---

[1] The Debtors in these chapter 11 cases are: Truvo USA LLC ("<u>TUSA</u>"), Truvo Parent Corp., Truvo Intermediate LLC, Truvo Subsidiary Corp. and Truvo Acquisition Corp. ("<u>TAC</u>")

[2] Capitalized terms used herein, but not defined herein, shall have the meanings ascribed thereto in the Motion.

of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and consideration of the Declaration of Marc Goegebuer in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration"), filed concurrently with the Motion; and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been given as set forth in the Motion, and no other or further notice being required under the circumstances; and the relief requested in the Motion being in the best interests of the Debtors, their estates and their creditors; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the hearings before the Court on July 1, 2010 (the "Interim Hearing") and July 22, 2010 (the "Final Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and as limited at the Final Hearing establish just cause for the relief granted herein; and upon all of the proceedings held before the Court; and after due deliberation and sufficient cause appearing therefor; and after overruling objections to the Motion, if any:

IT IS HEREBY FOUND that:

A.      On July 1, 2010 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of Title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in this Court.  The Debtors are continuing to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner and no official committee has yet been established in the Chapter 11 Cases.

B.     This Court has jurisdiction over these Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought are sections 105, 361 and 363 of the Bankruptcy Code, Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").  Venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     Good cause has been shown for the entry of this Final Order. As set forth in the Motion, the Debtors have significant and immediate cash needs to satisfy the postpetition costs and expenses of the restructuring, including their professionals.  Absent the immediate use of Cash Collateral (as defined below), the Debtors and their estates will suffer immediate and irreparable harm and will not be able to emerge successfully from chapter 11.

D.     The relief requested in the Motion is necessary, essential, and appropriate so that the Debtors can continue paying their professionals and in order to preserve the Debtors' prospects for a successful reorganization under chapter 11 of the Bankruptcy Code.

E.     Based on the Motion, the Budget (as defined herein), and the record presented to the Court at the Interim Hearing and the Final Hearing, the terms of the Debtors' use of Cash Collateral are fair and reasonable and reflect the Debtors' and their respective directors' exercise of prudent business judgment consistent with their fiduciary duties.

F.     The CoComm, and the Elliott Lender (all as defined below), as Senior Lenders (who together constitute Majority Lenders[3]), who have a first priority lien on the Cash Collateral, have negotiated at arms' length and in good faith with the Debtors regarding the

_____
[3] As defined in the Senior Facility Agreement.

Debtors' use of Cash Collateral to fund the administration of the Chapter 11 Cases and the continued funding of the Chapter 11 Cases. The CoComm and the Elliott Lender (who together hold in excess of 50% of the outstanding Senior Loans) have consented to the Debtors' use of the Cash Collateral through the Termination Date (as defined below), all subject to the terms and conditions set forth herein, including being granted the protection afforded a party acting in "good faith" pursuant to section 363(m) of the Bankruptcy Code.

G.     As a result of entry of this Final Order, as of the Petition Date, the Senior Lenders' interests in the Senior Lender Collateral pledged by the Debtors to secure the Senior Obligations, including the Cash Collateral, are adequately protected.

H.     The Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2). The use of the Cash Collateral as set forth in the Budget is necessary to avoid immediate and irreparable harm to the Debtors. The Court concludes that entry of this Final Order is in the best interest of the Debtors' estates and all creditors.

I.     Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to (i) the Office of the United States Trustee for the Southern District of New York; (ii) each of the Debtors' twenty (20) largest unsecured creditors; (iii) the Senior Lenders; (iv) counsel to J.P. Morgan Europe Limited as Security Agent ("Security Agent") under the Intercreditor Agreement dated May 23, 2007 (the "Intercreditor Agreement") and as Senior Agent ("Senior Agent") under the Senior Facility Agreement dated May 23, 2007 (the "Senior Facility Agreement"); (v) counsel to Elliott International, L.P., Elliott Associates, L.P., Springfield Associates, LLC, Kensington International Limited, Cherras Investments S.a.r.l., and Millar Investments S.a.r.l. (collectively, the "Elliott Lender"; (vi) Bank of New York as Trustee under the Notes Indenture (the "Indenture Trustee"), (vii)

Wilmington Trust (London) Limited as Administrative Agent under the PIK Loan Agreement dated May 23, 2007 (the "PIK Loan Agreement"); (viii) counsel to the Coordinating Committee of Senior Lenders (the "CoComm"); (ix) the Securities and Exchange Commission; (x) the Internal Revenue Service; and (xi) the United States Department of Justice.

J.      Certain of the Debtors are party to the Senior Facility Agreement among J.P. Morgan plc (as Global Co-ordinator, Arranger, and Bookrunner), the Senior Agent (as agent) J.P. Morgan Chase Bank N.A. (as Issuing Bank) and the lenders from time to time party thereto (the "Senior Lenders").  The obligations under the Senior Facility Agreement are secured by substantially all of the assets of TUSA, TAC and HY Notes Issuer and certain of their non-debtor affiliates, taken as a whole, pursuant to the Senior Security Documents (as defined in the Senior Facility Agreement).

K.      Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described below in paragraph 17), the Debtors acknowledge that as of the Petition Date each obligor under the Senior Facility Agreement is justly and lawfully indebted and liable, without defense, counterclaim or offset of any kind, to the Senior Lenders under the Senior Facility Agreement in the aggregate amount of approximately €777,624,505.73, plus accrued but unpaid interest, fees and expenses (the "Senior Obligations"). Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described in paragraph 17), the Debtors further acknowledge that the Senior Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms, and that no portion of the Senior Obligations or any amounts paid or applied to the obligations owing to the Senior Lenders prior to the Petition Date is subject to

avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or Claim (as such term is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

L.    Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described below in paragraph 17), the Debtors acknowledge that pursuant to (and subject to the terms of) the Senior Facility Agreement, the Intercreditor Agreement, and the Senior Security Documents, the Security Agent, for the benefit of the Senior Agent and the Senior Lenders, holds valid, binding, perfected, enforceable and non-avoidable first priority (solely as to priority, subject to permitted exceptions under the Senior Facility Agreement) liens on, and security interests in (the "Senior Lender Liens"), substantially all of the assets of TUSA, TAC and the HY Notes Issuer  and their direct and indirect subsidiaries, taken as a whole (the "Senior Lender Collateral").  Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described below in paragraph 17), the Debtors further acknowledge that the Senior Lender Liens on the Senior Lender Collateral are not subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense of Claim (as such term is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

M.    Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described below in paragraph 17), the Debtors acknowledge that (i) all cash, securities or other property (and the proceeds therefrom), as well as substantially all of the assets of the HY Notes Issuer's direct and indirect subsidiaries, comprise the Senior Lender Collateral as of the Petition Date and were subject to the Senior Lender Liens under the Senior Facility Agreement, the Intercreditor Agreement and applicable law, (ii) the

obligations under the Notes Indenture and the PIK Loan Agreement are structurally and contractually subordinated to the Senior Obligations as set out in the Intercreditor Agreement (with the exception of certain High Yield Notes Trustee Amounts (as defined in the Intercreditor Agreement)) and (iii) to the extent that liens on any Senior Lender Collateral were also granted to secure the obligations arising under the Notes Indenture, the Senior Lender Liens are structurally and contractually senior in priority.  As of the Petition Date, the Debtors had cash on hand in an aggregate amount of approximately $9 million, which constitutes Cash Collateral (as defined below) pursuant to section 363(a) of the Bankruptcy Code subject to the Senior Lender Liens.  The Senior Lenders, the Security Agent and the Senior Agent are entitled pursuant to sections 105, 361, 362 and 363(e) of the Bankruptcy Code to adequate protection of their interests in the Senior Lender Collateral pledged by the Debtors to secure the Senior Obligations, including the Cash Collateral, for any diminution in value of such Senior Lender Collateral, including without limitation, resulting from the use of Cash Collateral and the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code.

N.    Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described below in paragraph 17), each Debtor hereby forever waives and releases any and all Claims (as such term is defined in the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights against each of the Senior Lenders, the Security Agent and the Senior Agent whether arising in law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or Chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable federal or state law.

O.      The Debtors have presented to the CoComm and the Elliott Lender a detailed rolling 3-month cash flow statement for the Debtors on a consolidated basis (as updated or amended from time to time in accordance with this Final Order, the "Budget"), which shows the Debtors' monthly projected cash receipts and disbursements for the first three (3) months of the Chapter 11 Cases.  The Debtors have represented that all of the expenditures set forth in the Budget are necessary to avoid immediate or irreparable harm to the assets of their estates and are necessary and reasonable in order to allow the Debtors to preserve their going concern value.  The Majority Lenders have consented to use of Cash Collateral subject to entry of this Final Order and the Budget attached hereto as Exhibit 1.

P.      Based on the Debtors' representations made in the Motion, at the Interim Hearing and the July 14 hearing concerning the request for a preliminary injunction, the Indenture Trustee has consented to the Debtors' use of Cash Collateral, subject to the terms and conditions set forth herein, pursuant to Clause 15.7(a)(iii) of the Intercreditor Agreement.

Q.      Based upon the foregoing findings, and upon the record made before this Court at the Interim Hearing and the Final Hearing, and good and sufficient cause appearing therefore;

IT IS HEREBY ORDERED:

1.      **The Motion**. The Motion is granted on a final basis to the extent set forth herein. All objections to the Motion to the extent not withdrawn are hereby overruled.

2.      **Cash Collateral**. For purposes of this Final Order, "Cash Collateral" shall consist of all cash collateral (as defined in section 363(a) of the Bankruptcy Code) of TUSA, TAC and HY Notes Issuer, including without limitation, all items and sums referred to in Paragraph M above, deposits subject to setoff and all other cash proceeds arising from the sale, lease or

other disposition or conversion of Senior Lender Collateral pledged by the Debtors to secure the Senior Obligations.

**3.  Authorization**. Subject to the terms and conditions contained herein, the Debtors are authorized to use Cash Collateral, for the period from the Petition Date through the Termination Date (as defined below), in accordance with, and subject to, the Budget.  The use of Cash Collateral by the Debtors shall give rise to an obligation by the Debtors for the repayment of Cash Collateral used.  No Cash Collateral may be used or committed to be used for preparing or filing anything in these Chapter 11 Cases that would constitute a Termination Event (as defined in section 7 below).  The consent of the Majority Lenders to the use of the Cash Collateral subject to the Budget shall not be construed to be a consent beyond the Termination Date regardless of whether the aggregate funds shown on the Budget have been expended prior to the Termination Date.

**4.  Term**. The Debtors' authorization to use Cash Collateral shall continue with entry of this Final Order by the Court and terminate upon the occurrence of a Termination Event (the "<u>Termination Date</u>").  Occurrence of the Termination Date shall terminate the rights of the Debtors to use Cash Collateral hereunder, but shall not in any manner affect the rights, privileges or other protections afforded the Senior Lenders, the Senior Agent, Security Agent, or in any manner affect the validity, priority, enforceability or perfected status of any lien or security interest granted for the benefit of Senior Lenders pursuant hereto.

**5.  Adequate Protection**.

**5.1**  The Security Agent on behalf of the Senior Lenders is hereby granted perfected replacement liens and replacement security interests pursuant to section 361(2) of the Bankruptcy Code (the "<u>Replacement Liens</u>") to the extent of any

diminution in the value of the Senior Lenders' interest in the Senior Lender Collateral pledged by the Debtors to secure the Senior Obligations resulting from (i) the use of the Cash Collateral, (ii) the use, sale, or lease of the Senior Lender Collateral pledged by the Debtors to secure the Senior Obligations, or (iii) the imposition of the automatic stay (the aggregate amount of such diminution is referred to herein as the "Adequate Protection Obligations") on all property of the Debtors and their estates, whether now owned or hereafter acquired, including, without limitation, all accounts, chattel paper, deposit accounts and all cash and other property deposited therein or otherwise credited thereto, documents, equipment, fixtures, general intangibles, instruments, insurance, intellectual property, inventory, investment property, letter-of-credit rights, commercial tort claims, software, other property, books and records pertaining to the Senior Lender Collateral pledged by the Debtors to secure the Senior Obligations, causes of action under Chapter 5 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions") and the proceeds of any cause of action, including Avoidance Actions (whether recovered by judgment, settlement, or otherwise), any cash the Debtors receive by virtue of any Intercompany Transactions or other transactions under the Cash Management Order or any other order, and to the extent not otherwise included, all proceeds, supporting obligations and products of any and all of the foregoing (collectively, the "Postpetition Collateral"); provided, however, the granting of such liens complies with local law; provided further, however, that Postpetition Collateral shall exclude the Debtors' stock or membership interest in the respective subsidiaries to the extent that a pledge thereof would result in more than 65% of such stock or membership interests being pledged.

The Replacement Liens shall be senior to any other security interest or liens other than (a) security interests permitted under the Senior Facility Agreement to be senior to the liens granted or purported to be granted to the Senior Lenders, which security interests were actually granted and perfected prior the Petition Date ("Senior Prepetition Liens"); (b) the payment of U.S. Trustee Fees including any applicable interest, pursuant to 28 U.S.C. § 1930, and any fees payable to the Bankruptcy Court; (c) following a Termination Event and delivery of a written notice from the Majority Lenders to the Debtors (the "Carve Out Trigger Notice"), the payment of allowed professional fees and disbursements incurred by professionals retained by the Debtors and any statutory committee (each, a "Committee") appointed in these Chapter 11 Cases (the "Professional Fees and Disbursements") not to exceed the sum of (1) unpaid Professional Fees and Disbursements incurred prior to delivery of such a Carve Out Trigger Notice (the "Carve Out Trigger Date") in accordance with the Budget and (2) $3,000,000.  So long as no Carve Out Trigger Date shall have occurred and be continuing, the Debtors shall be permitted to pay without reduction of the Carve Out any statutory fees, fees payable to the Bankruptcy Court and Professional Fees and Disbursement, provided that the payment of such Professional Fees and Disbursements shall comply with the Budget, as set forth below (the amount of the permitted uses set forth in clauses (a) through (c) above being defined herein as the "Carve-Out").

**5.2**     The Replacement Liens granted for the benefit of the Senior Lenders shall attach and become valid, enforceable and fully perfected without any action by the Debtors, the Security Agent, the Senior Agent or the Senior Lenders, and no filing

or recordation or other act that otherwise may be required under federal or state law in any jurisdiction shall be necessary to create or perfect such liens and security interests. The Replacement Liens shall have the same relative priority among the Senior Lenders as provided in the Intercreditor Agreement. To the extent the Senior Lenders do not have a duly perfected lien or security interest in any of the Debtors' assets and all products, proceeds, offspring, rents or profits thereof, the Debtors will provide the Senior Lenders a first priority lien and security interest in such assets, subject to the Carve-Out and any validly perfected lien existing as of the Petition Date. If the Majority Lenders, hereafter reasonably requests the Debtors to execute and deliver to the Security Agent and Senior Lenders financing statements, security agreements or other instruments or documents considered by the Majority Lenders to be necessary or desirable to further evidence the perfection of the liens and security interests granted herein, the Debtors shall be authorized and directed to execute and deliver such documents.

    **5.3**    To the extent of any Adequate Protection Obligation, the Senior Lenders are granted a superpriority administrative claim against the Debtors' estates as contemplated by sections 503(b) and 507(b) of the Bankruptcy Code (the "<u>Superpriority Claims</u>"). Such Superpriority Claims shall be allowed and shall have priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtors, now in existence or hereafter incurred by any of the Debtors and over any and all other costs and expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code, and any

other provision of the Bankruptcy Code, whether incurred in the Chapter 11 Cases or any conversion thereof to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto, subject only to the Carve-Out.

**5.4** As further adequate protection for any diminution in value, the Debtors are authorized and directed (to the extent not paid by non-Debtor subsidiaries) to provide adequate protection payments to the Senior Lenders (the "Adequate Protection Payments"), in the form of: (a) payments in cash of all cash-pay interest (at the non-default rate), fees and other amounts when and as due under the Senior Facility Agreement (other than as agreed among the Supporting Senior Lenders and the Debtors pursuant to the Plan Support Agreement), (b) ongoing payment of the reasonable postpetition fees, costs and expenses of the  advisors to the CoComm, the Elliott Lender, the Senior Agent and the Security Agent, including, without limitation, the reasonable postpetition (and unpaid prepetition) fees and expenses of legal, financial advisory, investment banking and other professionals (including without limitation, Linklaters LLP ("Linklaters"), Susman Godfrey LLP ("Susman"), N.M. Rothschild & Sons Limited ("Rothschild"), Kleinberg, Kaplan, Wolff & Cohen, P.C. ("Kleinberg"), Allen & Overy LLP ("Allen & Overy"), and any replacement or addition thereto that the CoComm, the Elliott Lender, the Senior Agent or the Security Agent deems reasonably appropriate) retained by the CoComm, the Elliott Lender, the Senior Agent and the Security Agent (collectively, the "Adequate Protection Professionals"), and (c) the reasonable fees and out-of-pocket disbursements of the four members of the CoComm.  In addition, the Debtors shall provide continued maintenance and insurance of the Senior Lender Collateral pledged by the Debtors to

secure the Senior Obligations in the amounts and for the risks, and by the entities, required under the Senior Facility Agreement. None of the Adequate Protection Professionals, the members of the CoComm, the Elliott Lender, the Senior Agent or the Security Agent shall be required to comply with the U.S. Trustee fee guidelines as a condition to the Debtors' obligation to make the Adequate Protection Payments. The Adequate Protection Professionals shall deliver their invoices to the Debtors with copies to the U.S. Trustee and counsel to any Committee. The U.S. Trustee, the Debtors, and any Committee shall have five (5) business days from the date of delivery of such invoices to review and, if appropriate, dispute any of such fees and expenses. If no dispute to any of such fees and expenses is raised, the Debtors shall be authorized to pay such fees and expenses without further order of the Court; provided, however, that in the event of any such dispute the Debtors shall promptly pay all fees and expenses that are not subject to such dispute.

5.5    The Superpriority Claims and Replacement Liens granted by this Final Order shall survive entry of an order (i) converting any of the Chapter 11 Cases to chapter 7 cases, (ii) dismissing any of the Debtors' Chapter 11 Cases or (iii) appointing a chapter 11 trustee or examiner with expanded powers, and the Superpriority Claims and Replacement Liens granted pursuant to this Final Order shall continue in full force and effect notwithstanding the entry of such order, and such Superpriority Claims and Replacement Liens shall maintain their priority as provided by this Final Order.

5.6    For the avoidance of doubt, and notwithstanding anything in this or any other order (including the Debtor's Cash Management Order) to the contrary, all

means of adequate protection, including, without limitation, Replacement Liens, Superpriority Claims, and Adequate Protection Payments (including interest and professional fees), shall have priority over any administrative expense (including priority and superpriority) claims granted under the Debtor's Cash Management Order, or any other order, on account of Intercompany Transactions (as defined therein).

      **5.7**      So long as the Termination Date shall not have occurred, (i) the Debtors shall be permitted to pay administrative expenses incurred prior to the Termination Date and allowed at any time under sections 328, 330 and 331 of the Bankruptcy Code, as the same may be due and payable (having accrued prior to such Termination Date) and in such amount and manner as provided for in the Budget and (ii) such payments shall not be applied to reduce the Carve-Out.

      **5.8**      The Cash Collateral and Carve-Out may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) seeking to invalidate, set aside, avoid, recharacterize or subordinate, in whole or in part, the Senior Obligations, (ii) seeking monetary, injunctive or other affirmative relief against the CoComm, the Elliott Lender, the Senior Agent, the Security Agent, or any Senior Lender or their advisors, or (iii) seeking to prevent, hinder or otherwise delay the exercise by the Senior Agent, the Security Agent or the Senior Lenders of any rights and/or remedies under this Final Order, the Senior Facility Agreement, the Intercreditor Agreement, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the Senior Agent, the Security Agent or the Senior

Lenders upon any of the Senior Lender Collateral or Postpetition Collateral; (b) to make any distribution under a plan of reorganization, unless under a plan of reorganization that has been accepted by the class of Senior Lenders thereunder in accordance with Section 1126(c) of the Bankruptcy Code, (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of the Majority Lenders; (d) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in any of the Debtors or reorganized Debtors without the prior written consent of the Majority Lenders; (e) to in any way object to, contesting or interfering with the enforcement or realization upon any of the Senior Lender Collateral or Postpetition Collateral by the Senior Agent, the Security Agent or the Senior Lenders once a Termination Event has occurred; (f) in connection with the incurrence of indebtedness outside the ordinary course of business, without the prior consent of the Majority Lenders; (g) objecting to or challenging (or supporting or encouraging any other person to object to or challenge) in any way the claims, liens, or interests (including interests in the Senior Lender Collateral or Postpetition Collateral) held by or on behalf of any Senior Lender; (h) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the CoComm, the Elliott Lender, the Senior Agent, the Security Agent, or any Senior Lender in their capacity as agent and/or lender under the Senior Facility Agreement; (i) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount perfection, priority, or enforceability of any of the Senior Obligations or any other

rights or interests of the CoComm, the Elliott Lender, the Senior Agent, the Security
Agent or any Senior Lender; provided, however, that an aggregate of $65,000 from the
Carve-Out and the Cash Collateral may be used to pay professional fees and expenses
of the Committee (and only the Committee), if appointed, to investigate the claims and
liens of the Senior Lenders on or prior to the Investigation Termination Date (as
defined below).

     **5.9**     This Final Order shall be without prejudice to any further application
by the Majority Lenders, the Senior Agent or the Security Agent, on behalf of the
Senior Lenders, for other or further adequate protection or relief or modification of the
automatic stay or any other rights, claims or privileges of any kind.

**6.**    **Terms and Restrictions**. The Debtors' authorization to use Cash Collateral shall
be subject to the following additional terms and restrictions:

     **6.1**     From and after entry of this Final Order and continuing until the
Termination Date, the CoComm, the Elliott Lender, and the Security Agent shall be
granted access to the Debtors' books and records as the CoComm, the Elliott Lender,
and the Security Agent may from time to time reasonably request. The Debtors shall
continue to comply with all of their financial reporting obligations under the Senior
Facility Agreement, and shall provide to the CoComm, counsel to the Elliott Lender,
the Senior Agent and the Security Agent group-wide financial and operating reports on
a monthly basis as well as provide cash flow forecasts on a quarterly basis. The Debtor
shall provide monthly Budgets prepared in consultation with Houlihan, Lokey,
Howard & Zukin (Europe) Limited ("Houlihan") during the period from the Petition
Date through the date on which a plan of reorganization is confirmed.  The Budget

covering the first three months of these Chapter 11 Cases is attached as Exhibit 1 to this Final Order.  In addition to the Budget, the Debtors will undertake to deliver to the CoComm, counsel to the Elliott Lender, the Senior Agent and the Security Agent updates to the Budget on a monthly basis (the "<u>Budget Report</u>").  The Budget Report will show (i) the actual receipts and disbursements of the Debtors during the period from the initial Budget or the preceding Budget Report, and (ii) a comparison of the actual receipts and disbursements for the Debtors to the receipts and disbursements shown in the Budget both for the preceding reporting period and on a cumulative basis for the period from the Petition Date through the last day of the reporting period.

**6.2**	The Debtors shall not accept or collect at a discount, or reduction of, any receivable, claim or other general intangible, outside of the ordinary course of business and shall not sell or dispose of any Non-Cash Collateral without the express written approval of the Majority Lenders or Court approval, after notice and an opportunity to object to the CoComm, the Elliott Lender, the Senior Agent and the Security Agent.

**6.3**	The Debtors shall deliver to counsel for the CoComm, the Elliott Lender, the Senior Agent and the Security Agent all pleadings, motions, applications, operational information, financial information and other documents filed with the Court or the U.S. Trustee's Office.

**7.  Termination Events**. Each of the following shall constitute a "<u>Termination Event</u>" with respect to the authorization for the Debtors' use of Cash Collateral, unless waived by the Majority Lenders:

**7.1** That certain Plan Support Agreement by and among the Debtors and certain of the Senior Lenders party thereto from time to time, dated as of June 29, 2010, is terminated in accordance with the terms of Section 12(i)(a), (b), (c), (e) or (ii) thereof.

**7.2** The Chapter 11 Cases of TAC or TUSA shall have been dismissed or converted to a case under chapter 7 of the Bankruptcy Code, or there shall have been appointed in the Chapter 11 Cases a trustee or examiner with expanded powers beyond the authority to investigate particular activities of the Filing Entities.

**7.3** The Debtors file a motion seeking to amend the terms of this Final Order without the prior written consent of the Majority Lenders.

**7.4** The Debtors file a motion without the prior written consent of the Majority Lenders seeking approval of any debtor in possession financing or other credit extension for the Debtors.

**7.5** This Final Order is modified, vacated, stayed, supplemented, reversed, or is for any reason not binding on the Debtors, without the prior written consent of the Majority Lenders.

**7.6** The entry of an order in favor of a creditor granting relief from the automatic stay to foreclose on a material asset having value in excess of $3,000,000 of any of the Debtors, without the prior written consent of the Majority Lenders.

**7.7** The Debtors file a motion or adversary proceeding, or initiate any other court proceeding, seeking to (i) object to, set aside, avoid, assert defenses to or contest the Senior Obligations, the validity, perfection, priority or enforceability of the Senior Obligations or any other claims or liens of the Senior Lenders pursuant to the

Senior Facility Agreement against the Debtors or their assets, including but not limited to claims and liens arising under this Final Order, or (ii) obtain a monetary judgment or other relief against the Senior Lenders, or the Debtor supports any other party in taking an action described in this section 7.7, other than, in each case, to enforce the automatic stay, the Interim Order, the Final Order or the Plan Support Agreement, or to seek a temporary restraining order and/or injunction to stay proceedings against Non-Debtor Subsidiaries, as contemplated by clause 1(k) of the Plan Support Agreement.

**7.8** The Debtors fail to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under the Final Order.

**7.9** Any of the Debtors default in reporting financial information as and when required under the Final Order, continued for fifteen (15) days.

**7.10** There is a variance, resulting from the Debtors' expenditures, from the aggregate amount (for all Debtors combined) of expenditures set forth in the Budget that exceeds twenty percent (20%) on a cumulative basis from the Petition Date until the date of the most recently delivered Budget.

**8. Remedies**. The Senior Agent, on behalf of the Senior Lenders and upon the instruction of the Majority Lenders, shall provide the Debtors, counsel for any Committee (and if no Committee is appointed, the 20 largest creditors of the Debtors) and the U.S. Trustee with written notice of the occurrence of a Termination Event (the "Remedies Notice"). Upon the expiration of ten (10) calendar days after the Debtors, counsel for the Committee (and if no Committee is appointed, the 20 largest creditors of the Debtors) and the U.S. Trustee's receipt of the Remedies Notice, the automatic stay provisions of section 362 of

the Bankruptcy Code shall be deemed vacated and modified automatically to the extent necessary to permit the Senior Agent and the Security Agent to exercise the rights and remedies, for the benefit of the Senior Lenders, against all or a portion of the Senior Lender Collateral pledged by the Debtors to secure the Senior Obligations and the Postpetition Collateral, including, but not limited to, setoff of any existing Cash Collateral against the Senior Obligations. The Debtors right to use Cash Collateral shall terminate immediately upon receipt of the Remedies Notice. The Debtors and any Committee shall have the burden of proof at any hearing on any request by them to re-impose or continue the automatic stay of section 362(a) of the Bankruptcy Code, use Cash Collateral, or to obtain any other injunctive relief and the parties agree that upon the delivery of the Remedies Notice, the only issue to be determined and decided by the Court at any such hearing is whether the Termination Date has occurred and is continuing.

**9. Preservation of Rights**. The Senior Lenders and the Debtors may negotiate and execute additional stipulations for extensions of the consent to use Cash Collateral. A new stipulation extending consent to use of cash collateral may cover rights, claims and interests not dealt with in this Final Order, and may contain terms, conditions and restrictions not set forth herein. By consenting to entry of this Final Order, the Senior Lenders have not waived, are not estopped and are not otherwise limited from seeking additional rights, protections or benefits in any subsequent stipulation or from objecting to, or refusing to consent to, such other proposed stipulation. By consenting to entry of this Final Order, the Senior Lenders are not waiving any right they have to file a motion for relief from the automatic stay (or any other appropriate motion or adversary proceeding) to protect their interests during these Chapter 11 Cases. For the avoidance of doubt, nothing in this Final Order shall impair, waive,

modify or otherwise affect any of the rights, obligations or prohibitions of, or on, any of the parties under the Intercreditor Agreement.

**10. Binding Effect**. The provisions of this Final Order shall be binding and inure to the benefit of the Senior Lenders, the CoComm, the Elliott Lender, the Senior Agent, the Security Agent, the Debtors and their estates, and any trustee subsequently appointed in these Chapter 11 Cases or in any superseding chapter 7 case. In the event that any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity, enforceability or priority of any lien or claim authorized or created hereby.

**11. No Third Party Beneficiaries**. The Senior Lenders, the Senior Agent, the Security Agent, the Elliott Lender, and the CoComm shall not be liable to any third parties (including any and all creditors of the estates or the Debtors who may have administrative claims included within the Budget) and no such third parties are intended to or shall be deemed to be beneficiaries of the provisions of this Final Order.

**12. No Marshaling/Applications of Proceeds**. The Senior Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Senior Lender Collateral pledged by the Debtors to secure the Senior Obligations, as the case may be, and proceeds shall be received and applied in accordance with this Final Order notwithstanding any other agreement or provision to the contrary.

**13. Section 552(b)**. Subject to entry of the Final Order, the Senior Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply

to the Senior Lenders with respect to proceeds, product, offspring or profits of any of the Senior Lender Collateral pledged by the Debtors to secure the Senior Obligations.

**14. Good Faith**. The Senior Agent, the Security Agent, the CoComm and the Elliott Lender, each on its own behalf and for the benefit of the Senior Lenders, have acted in good faith (including, without limitation, for the purposes of Sections 363(m) of the Bankruptcy Code) in connection with this Final Order and their reliance on this Final Order is in good faith.

**15. Modification of Automatic Stay**. The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (a) permit the Debtor to grant the Adequate Protection Liens and Superpriority Claim; (b) permit the Debtor to perform such acts as the Senior Lenders or Security Agent may request to assure the perfection and priority of the liens granted herein; (c) permit the Debtor to incur all liabilities and obligations to the Senior Lenders under this Final Order; (d) permit the Adequate Protection Professionals to submit any invoices for prepetition fees and expenses pursuant to paragraph 5.4 of the Interim Order and this Final Order; and (e) permit the Senior Agent, the Security Agent and the Senior Lenders to exercise their rights and remedies under paragraph 8 of this Final Order.

**16. Non-Control**. The Senior Lenders, the Elliott Lender, and the CoComm, by consenting to entry of the Final Order and/or the performance of any acts contemplated herein (other than a foreclosure), and the Senior Agent and the Security Agent, by performance of any acts contemplated herein, shall not be deemed to be in control of the Debtors or their assets, or to be acting in a capacity of a "responsible person," "owner," "operator" or

"mortgagee in possession" with respect to the operation or management of the Debtors and their assets.

**17. Validity of Liens**. The Debtors' admissions and releases contained in paragraphs K through N of this Final Order shall be and hereby are binding upon the Debtors and any successor thereto, including any Chapter 7 or Chapter 11 trustee appointed or elected in any of the Cases, under all circumstances and for all purposes and the Debtors are deemed to have irrevocably waived and relinquished all rights to contest any such stipulation, admission or release as of the date of entry of this Final Order. The Debtors' admissions and releases contained in paragraphs K through N of this Final Order shall be binding on all other parties in interest, including, without limitation, any Committee, under all circumstances and for all purposes unless, and solely to the extent that, any party in interest (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so) commences an adversary proceeding or contested matter on behalf of the Debtors' estates against the Senior Agent, the Security Agent or the Senior Lenders by no later than a date that is sixty (60) days from entry of the Final Order (the "Investigation Termination Date"), (x) challenging the amount, validity, enforceability, priority or extent of the Senior Obligations or the Senior Lender Liens on the Senior Lender Collateral pledged by the Debtors to secure the Senior Obligations or (y) otherwise asserting any claims or causes of action against the Senior Agent, the Security Agent or the Senior Lenders. If no such adversary proceeding or contested matter is properly filed on or prior to the Investigation Termination Date: (a) the Debtors' admissions and releases contained in paragraphs K through N of this Final Order shall be binding on all parties in interest, including the Committee, if any; (b) the obligations of the Debtors to the Senior Lenders shall constitute allowed claims for all purposes in the

Chapter 11 Cases and any subsequent chapter 7 case(s); (c) the Senior Lender Liens upon the Senior Lender Collateral pledged by the Debtors to secure the Senior Obligations shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, the priority of which is governed by the Intercreditor Agreement, and are not subject to recharacterization, subordination or otherwise avoidable; and (d) the Senior Obligations and the Senior Lender Liens on the Senior Lender Collateral pledged by the Debtors to secure the Senior Obligations shall not be subject to any other or further challenge by any Committee or any other party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto. If any such adversary proceeding or contested matter is properly and timely filed on or prior to the Investigation Termination Date, the Debtors' admissions and releases contained in paragraphs K through N of this Final Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) except to the extent that such admissions and releases were expressly challenged in such adversary proceeding or contested matter. Nothing contained in this Final Order shall be deemed to grant standing to any Committee or any other party to commence any such adversary proceeding or contested matter.

    **18. Reservation of Rights.** The Senior Lenders have reserved the right to condition consent to use of Cash Collateral on the requirement that in the event the Senior Lender Collateral is sold pursuant to a plan of reorganization, the Debtors shall be prohibited from seeking confirmation of such plan under section 1129(b)(2)(A) of the Bankruptcy Code for the class of claims that includes the Senior Obligations, other than pursuant to 1129(b)(2)(A)(ii) of the Bankruptcy Code; provided, however, that nothing herein constitutes any waiver of the Debtor's rights with respect to such condition.

**19. No Waiver by Failure to Seek Relief**.  The failure of the CoComm, the Elliott Lender, the Senior Agent, the Security Agent, or any Senior Lender to seek relief or otherwise exercise its rights and remedies under this Final Order, the Senior Facility Agreement, or applicable law, as the case may be, shall not constitute waiver of any of the rights hereunder, thereunder, or otherwise of the CoComm, the Elliott Lender, the Senior Agent, the Security Agent, or any Senior Lender.

**20. Indenture Trustee Fees**.  The Budget shall contain authorization to pay (and this Final Order constitutes direction to pay) the reasonable, out-of-pocket fees and expenses of the Indenture Trustee and its advisors, solely to the extent required and permissible under the Notes Indenture and Intercreditor Agreement, including without limitation the last parenthetical in Clause 21.1(a)(ii) of the Intercreditor Agreement.  For the avoidance of doubt, payment of such fees and expenses shall not be authorized if such fees and expenses are incurred in connection with (a) challenging the validity or enforceability of the Intercreditor Agreement, or (b) any action that is prohibited by, or inconsistent with, the Intercreditor Agreement, including without limitation Clause 15.7 thereof.  The Indenture Trustee and the Debtors shall comply with the procedures for payment of the fees and expenses of the Adequate Protection Professionals set forth in paragraph 5.4 of this Final Order. Notwithstanding the foregoing, the Debtors are not required to pay any fees of financial advisors to the Indenture Trustee unless and until the Indenture Trustee and the Debtors execute an engagement letter with respect to the same and such amounts are within the Budget.

**21. Binding Effect of Final Order**.  This Final Order shall constitute findings of fact and conclusions of law and immediately upon entry by this Court (notwithstanding any

applicable law or rule to the contrary, including Bankruptcy Rule 6004(h), 7062, or 9014 or Rule 62(a) of the Federal Rules of Civil Procedure), the terms and provisions of this Final Order shall, *nunc pro tunc* to the Petition Date, become valid and binding upon and inure to the benefit of the Debtor, the Senior Lenders, all other creditors of the Debtor, any Committee that may be appointed in the Chapter 11 Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Chapter 11 Cases, any successor cases to the Chapter 11 Cases, or upon dismissal of the Chapter 11 Cases or any such successor case.  In the event of any inconsistency between the provisions of this Final Order and any other order (including the Interim Order) or any loan or other agreement, the provisions of this Final Order shall govern and control.

Dated: New York, New York
     July 22, 2010

**s/Arthur J. Gonzalez**
CHIEF UNITED STATES BANKRUPTCY JUDGE

# Exhibit 1

| | | 10-Jul | 10-Aug | 10-Sep | | July to Sep |
|---|---|---|---|---|---|---|
| Bankruptcy Professionals (including Cleary Gottlieb, Simpson Thacher, and Jenner & Block) | USD | 2,250,000 | 2,250,000 | 2,250,000 | | 6,750,000 |
| Ordinary Course Professional Fees (incl. Financial Dynamics, Jones Day and V. Berger) | USD | 45,000 | 45,000 | 45,000 | | 135,000 |
| Claims and Noticing Agent (KCC) | USD | 25,000 | 25,000 | 25,000 | | 75,000 |
| CoComm Legal Advisors (Linklaters and Susman) | USD | 1,250,000 | 1,250,000 | 1,250,000 | | 3.750,000 |
| CoComm Members Fees and Expenses | USD | 187,500 | 187,500 | 187,500 | | 562,500 |
| Legal Advisors to the Elliott Lender (KKWC) | USD | 200,000 | 200,000 | 200,000 | | 600,000 |
| Indenture Trustee (The Bank of New York) | USD | 100,000 | 100,000 | 100,000 | | 300,000 |
| Financial Advisors to Informal Noteholder Group (Jefferies) | USD | 125,000 | 125,000 | 125,000 | | 375,000 |
| Tax Advisors (Deloitte) | USD | 300,000 | 300,000 | 300,000 | | 900,000 |
| Auditors' Fees (Ernst & Young) | USD | 35,000 | 35,000 | 35,000 | | 105,000 |
| PIK Agent Fees (annual) | USD | 0 | 60,000 | 0 | | 60,000 |
| Medical Insurance Payments | USD | 0 | 0 | 15,000 | | 15,000 |
| Excess Saving Plan Fees | USD | 1,250 | 0 | 0 | | 1,250 |
| Various (incl. bank fees) | USD | 6,000 | 6,000 | 6,000 | | 18,000 |
| **Total** | **USD** | **4,524,750** | **4,583,500** | **4,538,500** | | **13,646,750** |