UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X
                                                                 :
*In re*                                                          :     Chapter 11
                                                                 :
Truvo USA LLC, *et al.*                                          :     Case No. 10-13513 (AJG)
                                                                 :
                                                                 :
                                    Debtors.                     :     Jointly Administered
                                                                 :
-------------------------------------------------------------------- X

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER
### UNDER 11 U.S.C. § 1129 AND RULE 3020 OF THE FEDERAL RULES
### OF BANKRUPTCY PROCEDURE CONFIRMING THE SECOND
### <u>AMENDED JOINT PLAN OF REORGANIZATION OF TRUVO USA LLC, *ET AL.*</u>

Upon the Second Amended Joint Plan of Reorganization of Truvo USA LLC, *et al.*, Debtors Under Chapter 11 Of The Bankruptcy Code, dated October 22, 2010 [Docket No. 299] attached as <u>Exhibit A</u> hereto (as amended, modified or supplemented from time to time, including without limitation the amendments and modifications reflected in this Confirmation Order, the "<u>Plan</u>"), as supplemented by the Supplement To The Joint Plan Of Reorganization of Truvo USA LLC, *et al.*, Debtors Under Chapter 11 Of The Bankruptcy Code, dated September 29, 2010 [Docket No. 235] (the "<u>Plan Supplement</u>"), as amended by the Amended Supplement To The Joint Plan Of Reorganization of Truvo USA LLC, *et al.*, Debtors Under Chapter 11 Of The Bankruptcy Code, dated October 19, 2010 [Docket No. 284] (as further amended from time to time, the "<u>Amended Plan Supplement</u>"); and the First Amended Disclosure Statement With Respect To The First Amended Joint Plan of Reorganization of Truvo USA LLC, *et al.*, Debtors Under Chapter 11 Of The Bankruptcy Code, dated September 7, 2010 [Docket No. 180] (as amended, the "<u>Disclosure Statement</u>"), as supplemented by the Supplemental Disclosure Statement Concerning the Second Amended Joint Plan of Reorganization of Truvo USA LLC,

*et al.,* Debtors Under Chapter 11 Of The Bankruptcy Code, dated October 5, 2010 [Docket No. 246] (the "<u>Supplement</u>"); and the hearing before this Court on September 1, 2010 to consider approval of the Disclosure Statement and the notice procedures with respect thereto; and entry of the Order [Docket No. 254] (the "<u>Solicitation Procedures Order</u>") approving, among other things, the Disclosure Statement as containing adequate information regarding the First Amended Joint Plan of Reorganization of Truvo USA LLC, *et al*., Debtors Under Chapter 11 Of The Bankruptcy Code, dated September 7, 2010 [Docket No. 181] (the "<u>First Amended Plan</u>") and certain related notice and solicitation procedures; and upon the Solicitation Procedures Order fixing September 30, 2010 at 4:00 p.m. (New York City Time) as the deadline for the filing of objections to confirmation of the First Amended Plan (the "<u>Original Confirmation Objection Deadline</u>"), and October 4, 2010 at 4:00 p.m. (New York City Time) as the deadline for the Statutory Committee of Unsecured Creditors ("<u>Creditors Committee</u>") to file objections to confirmation of the First Amended Plan; and no such objections having been filed with the Court or served upon the Debtors on or prior to the applicable deadline; and the Debtors, the Creditors Committee, the Elliott Lender, certain Senior Lenders holding approximately 73.9% of the outstanding principal amount of the Senior Loans and certain HY Noteholders holding approximately 55.7% of the outstanding principal amount of the HY Notes having entered into that certain Plan Settlement Agreement, as of October 5, 2010, and set forth in <u>Exhibit C</u> to the Supplement (the "<u>Plan Settlement Agreement</u>") [Docket No. 246]; and the Debtors having filed with the Court certain modifications (the "<u>Plan Modifications</u>") to the Plan pursuant to the Plan Settlement Agreement; and the hearing before this Court on October 5, 2010 to consider approval of the Supplement and the notice procedures with respect thereto; and entry of the Order [Docket  No. 205] (the "<u>Supplemental Disclosure Order</u>") approving, among other things,

the Supplement as containing adequate information regarding the Plan Modifications and certain related notice and solicitation procedures; and such transmissions at such time being due and adequate notice under the circumstances; and upon the Supplemental Disclosure Order fixing October 21, 2010 at 4:00 p.m. (New York City Time) as the deadline for Senior Lenders to file objections to confirmation of the  Plan (the "New Confirmation Objection Deadline"); and upon the Amended Plan Supplement having been filed with the Court on October 19, 2010; and no such objections having been filed with the Court or served upon the Debtors on or prior to the New Confirmation Objection Deadline; and upon the Debtors' Memorandum Of Law In Support Of Confirmation Of The Joint Plan Of Reorganization Of Truvo USA LLC, *et al*., Debtors Under Chapter 11 Of The Bankruptcy Code, dated October 22, 2010, [Docket No. 308] (the "Confirmation Memorandum"), filed with the Court on October 22, 2010; and upon the Declaration of Marc C. F. Goegebuer In Support Of Confirmation Of The Second Amended Joint Plan Of Reorganization Of Truvo USA LLC, *et al*., Debtors Under Chapter 11 Of The Bankruptcy Code, sworn on October 22, 2010 [Docket No. 301] (the "Goegebuer Declaration"); and upon the Declaration of Saul E. Burian In Support Of Confirmation Of The Second Amended Plan Of Reorganization Of Truvo USA LLC, *et al*., Debtors Under Chapter 11 Of The Bankruptcy Code, sworn on October 21, 2010 [Docket No. 302] (the "Burian Declaration"); and upon the Declaration of Simon Mortimore, QC In Support Of Confirmation Of The Second Amended Plan Of Reorganization Of Truvo USA LLC, *et al*., Debtors Under Chapter 11 Of The Bankruptcy Code, sworn on October 21, 2010 [Docket No. 300] (the "Mortimore Declaration"); and a hearing to consider confirmation of the Plan having been held before this Court commencing on October 26, 2010 (the "Confirmation Hearing"); and upon the full and complete record of the Confirmation Hearing, and all matters and proceedings heretofore part of the record

in these cases; and for the reasons set forth on the record by the Court; and after due deliberation and sufficient cause appearing therefor;

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### IT IS HEREBY FOUND AND DETERMINED THAT:

A. Pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

B. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan. Paragraph headings or captions are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Confirmation Order.

C. Jurisdiction and Venue. This Court has jurisdiction over the Plan, the transactions contemplated under the Plan, and the chapter 11 cases of the Debtors (the "Chapter 11 Cases") pursuant to 28 U.S.C. §§ 157 and 1334. This Court also has jurisdiction and authority to interpret the terms of the Intercreditor Agreement. Mortimore Decl. ¶¶ 6, 14-21. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of title 11 of the United States Code (the "Bankruptcy Code") and the Bankruptcy Rules and should be confirmed.

D. Judicial Notice. This Court takes judicial notice of the dockets of the Chapter 11 Cases, which are jointly administered under Case No. 10-13513 (AJG), captioned as In re Truvo USA LLC, et al., and of the related adversary proceeding, Adv. Pro. No. 10-3341 (AJG), captioned as Truvo USA LLC, et al., v. Bank of New York Mellon Corporation,

4

Indenture Trustee with respect to the HY Notes, *et al*., maintained by the Clerk of the Court, including, without limitation, all pleadings, declarations, and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at, the hearings held before the Court during the pendency of the Chapter 11 Cases, including the following:

(i)        On July 14, 2010, the Debtors filed the Joint Plan of Reorganization of Truvo USA LLC, *et al*., Debtors Under Chapter 11 Of The Bankruptcy Code [Docket No. 71] and the related disclosure statement [Docket No. 70].  On August 30, 2010, the Debtors filed the First Amended Plan [Docket No. 181] and the related disclosure statement [Docket No. 180].  The Disclosure Statement was subsequently amended to incorporate revisions set forth in letters dated September 2, 2010 and September 7, 2010 and the Supplement dated October 5, 2010.  A copy of the Disclosure Statement, as distributed through the solicitation process and approved by this Court can be found at Docket No. 216.

(ii)       The Plan and the related Disclosure Statement provide for the consummation of the Financial Restructuring and the Restructuring Transactions.  The Plan includes, as exhibits, substantially final forms of the following documents:

        a.      <u>Exhibit A</u>: Purchase Agreement

        b.      <u>Exhibit B</u>: Agents Conditions Precedent

        c.      <u>Exhibit C</u>: Executory Contracts and Unexpired Leases Assumed by the Debtors

        d.      <u>Exhibit D</u>: Executory Contracts and Unexpired Leases Rejected by the Debtors

        e.      <u>Exhibit E</u>: Warrants Terms and Conditions

        f.      <u>Exhibit F</u>: Instructions

(iii)      On July 15, 2010, the Debtors filed the Motion For An Order Approving (I) Adequacy Of Information Contained In The Disclosure Statement; (II) Record

Date In Connection With Proposed Plan Of Reorganization; (III) Solicitation Procedures: (IV) Forms Of Ballots; (V) Temporary Allowance Procedures; (VI) Vote Tabulation Procedures; and (VII) Scheduling Hearing on Confirmation of Debtors' Plan of Reorganization [Docket No. 72] (the "Solicitation Procedures Motion").

(iv)     On September 1, 2010, the Court held a hearing to consider the approval of the Disclosure Statement and the Solicitation Procedures Motion.  On September 8, 2010, the Court entered the Solicitation Procedures Order.

(v)     On September 29, 2010, the Debtors filed the Plan Supplement [Docket No. 235].

(vi)     On October 1, 2010, the Debtors filed a letter addressed to the Court, reporting that the Debtors had reached agreement in principle with the Creditors Committee, the Coordinating Committee of Senior Lenders (the "CoComm"), and the Elliott Lender concerning the Plan Modifications [Docket No. 239].

(vii)     The Plan Settlement Agreement, dated October 5, 2010, was entered into by and among the Debtors, the Elliott Lender, the Creditors Committee, certain Senior Lenders holding approximately 73.9% of the outstanding principal amount of the Senior Loans (including, among others, the members of the CoComm) and certain HY Noteholders holding approximately 55.7% of the outstanding principal amount of the HY Notes (including, among others, the HY Noteholders serving on the Creditors Committee).

(viii)     On October 5, 2010, the Debtors filed the Second Amended Joint Plan of Reorganization of Truvo USA LLC, *et al*., Debtors Under Chapter 11 Of The Bankruptcy Code, dated October 5, 2010 [Docket No. 247].

(ix)     On October 5, 2010, the Debtors filed the Declaration Of Evan Gershbein Regarding The Tabulation Of Ballots With Respect to Voting On First Amended Joint Plan Of Reorganization Of Truvo USA LLC, *et al.*, Debtors Under Chapter 11 Of The Bankruptcy Code, dated October 4, 2010 [Docket No. 250] (the "<u>First Non-Securities Voting Declaration</u>").

(x)     On October 5, 2010, the Debtors filed the Motion For An Order: (A) Authorizing Certain Modifications To Debtors' First Amended Joint Plan Of Reorganization;(B) Approving Supplement To Disclosure Statement; (C) Establishing Procedures For Voting on Debtors' Second Amended Joint Plan Of Reorganization; And (D) Rescheduling Confirmation Hearing (the "<u>Supplemental Disclosure Motion</u>") [Docket No. 248].

(xi)     On October 6, 2010, the Court held a hearing to consider the approval of the Supplement and the Supplemental Disclosure Motion and entered the Supplemental Disclosure Order [Docket No. 254], approving both the Supplement and the Supplemental Disclosure Motion.

(xii)     On October 19, 2010, the Debtors filed the Amended Plan Supplement.  The Amended Plan Supplement includes the following documents as exhibits:

a.     <u>Exhibit A:  Amended Certificate of Incorporation of Reorganized Truvo</u>

b.     <u>Exhibit B:  Equityco Charter</u>

c.     <u>Exhibit C:  Funds Flow Agreement</u>

d.     <u>Exhibit D:  Holdco Charter</u>

e.     <u>Exhibit E:  New Intercreditor Agreement</u>

f.     <u>Exhibit F:  New PIK Agreement</u>

g.  Exhibit G:  New Senior Credit Agreement (including the New RCF)

h.  Exhibit H:  PIKco Charter

i.  Exhibit I:  Shareholders' Agreement

j.  Exhibit J:  TAC Purchase Agreement

k.  Exhibit K:  New Indemnity

l.  Exhibit L:  Management Incentive Plan

m.  Exhibit M:  Form of Debt Acknowledgement Obligation

(xiii)    On October 22, 2010 the Debtors filed the Amended Declaration Of David M. Sharp Regarding The Tabulation Of Ballots With Respect to Voting On First Amended Joint Plan Of Reorganization Of Truvo USA LLC, *et al.*, Debtors Under Chapter 11 Of The Bankruptcy Code, dated October 22, 2010 [Docket No. 306] (the "Securities Voting Declaration" and collectively with the First-Non-Securities Voting Declaration, the "First Voting Report").

(xiv)    On October 22, 2010, the Debtors filed the Declaration Of Evan Gershbein Regarding The Tabulation Of Ballots With Respect to Voting On Second Amended Joint Plan Of Reorganization Of Truvo USA LLC, *et al.*, Debtors Under Chapter 11 Of The Bankruptcy Code, dated October 22, 2010 [Docket No. 305] (the "Second Non-Securities Voting Declaration", and together with the First Voting Report, the "Voting Report").  The Voting Report shows that each Impaired Class entitled to vote on the Plan has voted in favor of the Plan. More specifically, the Plan was accepted by (i) Holders of 100% in amount and 100% in number of the Senior Debt Claims voted; (ii) Holders of 98.24% in amount and 94.74% in number of HY Notes Claims voted; (iii) Holders of 95.77% in amount and 81.82% in number of PIK Debt Claims voted; and (iv) Holders of 100% in amount and 100% in number of General Unsecured

Claims voted. In addition, the Voting Report shows that a high proportion of the Senior Lenders, the HY Noteholders and the PIK Lenders cast ballots to accept or reject the Plan, including 99.28% of the total outstanding amount of Allowed Senior Debt Claims, 86.11% of the total outstanding amount of Allowed HY Notes Claims, and 87.65% of the total outstanding amount of Allowed PIK Debt Claims.

(xv)     On October 22, 2010, the Debtors filed the Second Amended Joint Plan of Reorganization of Truvo USA LLC, *et al*., Debtors Under Chapter 11 Of The Bankruptcy Code, dated October 22, 2010 [Docket No. 303].

(xvi)     On October 25, 2010, the Debtors filed a commitment letter, by and among Newco, certain other subsidiaries of the Debtors and Deutsche Bank AG, London Branch, dated as of October 25, 2010, with respect to the Daylight Facility [Docket No. 312].

(xvii)    On October 25, 2010, the Debtors filed amended Exhibits E and L to the Amended Plan Supplement [Docket No. 309].

(xviii)  On October 26, 2010, the Court held the Confirmation Hearing at which this Court considered confirmation of the Plan.

E.     Transmittal and Service of Notices.  Notice of the Confirmation Hearing and the relevant deadlines for submission of objections has been provided as prescribed by this Court in the Solicitation Procedures Order and the Supplemental Disclosure Order.  Such notice was adequate and sufficient pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002(b) and 3020 and other applicable law and rules, and no other or further notice is or shall be required.  Publication of the Confirmation Hearing Notice as set forth in the affidavit of publication [Docket No. 221] was adequate and sufficient and no other or further notice is or shall be required.  The First Amended Plan and Disclosure Statement, and the original

Confirmation Hearing Notice were transmitted and served as set forth in the affidavits of mailing filed with this Court [Docket Nos. 212 and 216]. The Supplement, the Plan (dated October 5, 2010), and the supplemental Confirmation Hearing Notice were transmitted and served as set forth in the affidavits of mailing filed with this Court [Docket Nos. 264 and 274]. The Plan Supplement was transmitted and served as set forth in the affidavit of mailing filed with this Court [Docket No. 242]. The Amended Plan Supplement was transmitted and served as set forth in the affidavit of mailing filed with this Court [Docket No. 295]. Such transmittal and service was adequate and sufficient, and in compliance with sections 1125 and 1126 of the Bankruptcy Code, and no other or further notice of such materials is or shall be required.

F.   Solicitation and Voting. Votes to accept and reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Procedures Order, the Disclosure Statement, the Supplement, the Supplemental Disclosure Order and industry practice. See Voting Report.

G.   Burden of Proof. The Debtors, as proponents of the Plan, have satisfied their burden of proving the elements of sections 1129 (a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

H.   Compliance with Section 1129(a)(1) of the Bankruptcy Code. As set forth below, the Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(i)   Proper Classification. The classification scheme of Claims and Equity Interests under the Plan is reasonable. Claims or Equity Interests in each Class are substantially similar to other Claims or Equity Interests in such Class, and the Plan therefore satisfies the requirements of section 1122(a) of the Bankruptcy Code.

(ii)    <u>Designation of Classes</u>.  The Plan properly designates Classes of Claims and Equity Interests in accordance with the applicable provisions of the Bankruptcy Code, including sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(iii)    <u>Specified Unimpaired Classes</u>.  The Plan specifies that Classes 1A, 2A, 3A, 4A, 5A, 1B, 2B, 3B, 4B and 5B are Unimpaired, thereby satisfying the requirements of section 1123(a)(2) of the Bankruptcy Code.  Pursuant to section 1126(f) of the Bankruptcy Code, Classes 1A, 2A, 3A, 4A, 5A, 1B, 2B, 3B, 4B and 5B are deemed to accept the Plan.

(iv)    <u>Specified Impaired Classes</u>.  The Plan specifies that Classes 3C, 4C, 5C, 2D, 3D, 4D, 5D, 2E, 1F, 2F, 3F, 4F, 5F, 1G, 2G, 3G, 4G, 5G and 1H are Impaired, thereby satisfying the requirements of section 1123(a)(3) of the Bankruptcy Code.  Pursuant to section 1126(g) of the Bankruptcy Code, Classes 1G, 2G, 3G, 4G, 5G and 1H are deemed to reject the Plan by virtue of receiving no distributions thereunder.

(v)    <u>No Discrimination</u>.  The Plan provides for the same treatment of each Claim or Equity Interest of a particular Class, unless the Holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of its Claim or Equity Interest, thereby satisfying the requirements of section 1123(a)(4) of the Bankruptcy Code.

(vi)    <u>Implementation of Plan</u>.  Article V of the Plan provides for adequate means for its implementation, thereby satisfying 1123(a)(5) of the Bankruptcy Code. <u>See also</u> Goegebuer Decl. ¶¶ 16-22; Burian Decl. ¶¶ 19-20.

(vii)    <u>Non-Voting Equity Securities</u>.  The Certificate of Incorporation of Reorganized Truvo shall be amended as provided for under Section 5.10(a)(i) of the Plan and as set forth in <u>Exhibit A</u> of the Amended Plan Supplement [Docket. No. 284], thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

(viii)     Designation of Officers, Directors or Trustee.  Section 5.10 of the

Plan is consistent with the interests of creditors, equity security holders and public policy in

accordance with section 1123(a)(7) of the Bankruptcy Code.

(ix)     Additional Plan Provisions.  The Plan contains no provision that is

inconsistent with the applicable provisions of the Bankruptcy Code and therefore satisfies section

1123(b)(6) of the Bankruptcy Code.

(x)     Identity of Proponents.  In accordance with Bankruptcy Rule

3016(a), the Plan is dated and identifies the entities submitting it as proponents.

I.     Compliance with Section 1129(a)(2) of the Bankruptcy Code.  The

Debtors have complied with each of the applicable provisions of the Bankruptcy Code including,

without limitation, sections 1125 and 1126 of the Bankruptcy Code, and therefore have satisfied

the requirements of section 1129(a)(2) of the Bankruptcy Code, as follows:  (i) the Debtors are

proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan

under section 1121(a) of the Bankruptcy Code, (ii) the Debtors have complied with each of the

applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by

orders of the Court, and (iii) the Debtors have complied with each of the applicable provisions of

the Bankruptcy Code, the Bankruptcy Rules, the local rules of this Court, the Solicitation

Procedures Order, and the Supplemental Disclosure Order in transmitting notices soliciting

acceptances of the Plan.

J.     Proposed in Good Faith.  The Plan has been proposed in good faith and

not by any means forbidden by law, thereby satisfying the requirements of section 1129(a)(3) of

the Bankruptcy Code.  In determining that the Plan has been proposed in good faith, the Court

has examined the totality of the circumstances surrounding the filing and prosecution of the

Chapter 11 Cases and the formulation of the Plan. The Chapter 11 Cases were filed, and the Plan was proposed with, the proper purpose of maximizing the value of the Debtors' estates, permitting payments to the HY Noteholders and the PIK Lenders that would otherwise be payable to the Holders of Senior Debt Claims and forging a consensual resolution of the Financial Restructuring, including the TUSA Sale and the making of distributions in respect of Claims. See Goegebuer Decl. ¶¶ 7-15; Burian Decl. ¶¶ 8-16.

K.      The Plan incorporates certain modifications made in accordance with the Plan Settlement Agreement. The Plan Settlement Agreement was proposed and negotiated in good faith and at arm's length among the parties thereto with the legitimate and honest purpose of settling disputes among them and maximizing the recoveries by the Debtors' creditors. The Plan Settlement Agreement enabled the avoidance of complex, expensive and protracted litigation with uncertain outcomes and contains reasonable terms, whose implementation is in the best interest of the Debtors' estates. See Goegebuer Decl. ¶¶ 14-15; Burian Decl. ¶¶ 12-16; Supplemental Disclosure Order.

L.      <u>Payments for Services or Costs and Expenses</u>. Any payments made or to be made by the Debtors for services or for costs and expenses in, or in connection with, the Chapter 11 Cases or the Plan have, to the extent required by the Bankruptcy Code, the Bankruptcy Rules or the Orders of this Court, been approved by, or are subject to the approval of, this Court as reasonable. Accordingly, the Plan satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

M.      <u>Directors, Officers and Insiders</u>. The identity and affiliations of the persons proposed to serve as the initial directors and officers of Reorganized Truvo (including the identity of any insider that will be employed or retained by Reorganized Truvo) and directors

of the Reorganized Truvo Group have been disclosed in Section 5.10 of the Plan and <u>Exhibit A</u> to the Goegebuer Declaration. The appointment of such individuals to such positions, or the continuation of such individuals in such positions, is consistent with the interests of creditors, equity security holders and public policy, thereby satisfying section 1129(a)(5) of the Bankruptcy Code.

N. <u>No Rate Changes</u>. Section 1129(a)(6) of the Bankruptcy Code is satisfied because the Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

O. <u>Best Interests of Creditors</u>. The Liquidation Analysis annexed to the Disclosure Statement as <u>Exhibit 3</u> (i) is persuasive and credible and (ii) has not been controverted by other evidence or challenged in any objection. As demonstrated by the Liquidation Analysis, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code because each holder of a Claim or Equity Interest in an Impaired Class of Claims or Equity Interests either (i) has accepted the Plan, or (ii) will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. <u>See</u> Disclosure Statement, Exh. 3 (Liquidation Analysis); § VI.C.4.

P. <u>Acceptance of the Plan By Each Impaired Class</u>. Classes 1A, 2A, 3A, 4A, 5A, 1B, 2B, 3B, 4B and 5B are Unimpaired Classes of Claims and are deemed to accept the Plan under section 1126(f) of the Bankruptcy Code. As set forth in the First Voting Report, Classes 3C, 4C, 5C, 2D, 3D, 4D, 5D, 2E, 1F, 2F, 3F, 4F, and 5F are Impaired Classes of Claims and voted to accept the First Amended Plan. Pursuant to the Supplemental Disclosure Order, Holders of Claims in Class 2D, 3D, 4D, 5D, 2E, 1F, 2F, 3F, 4F, and 5F who submitted Ballots

accepting the First Amended Plan on or prior to the Original Voting Deadline are deemed to have accepted the Plan. As set forth in the Second Non-Securities Voting Declaration, Classes 3C, 4C, and 5C are Impaired Classes of Claims and have voted to accept the Plan. Pursuant to the Supplemental Disclosure Order, Holders of Claims in Class 3C, 4C, and 5C who submitted Ballots accepting the First Amended Plan on or prior to the Original Voting Deadline and who did not submit a superseding Amended Ballot rejecting the Plan are deemed to have accepted the Plan. Therefore, Classes 3C, 4C, and 5C have accepted the Plan. Classes 1G, 2G, 3G, 4G, 5G, and 1H are Impaired Classes of Claims and Equity Interests and are deemed to reject the Plan. Therefore, section 1129(a)(8) has not been satisfied with respect to these Classes.

Q. <u>Cram Down</u>. Notwithstanding the deemed rejection of the Plan by Classes 1G, 2G, 3G, 4G, 5G, and 1H, the Plan is confirmable because it satisfies section 1129(b)(1) of the Bankruptcy Code with respect to those Classes. The Plan does not discriminate unfairly and is fair and equitable with respect to Classes 1G, 2G, 3G, 4G, 5G, and 1H in that there is no Holder of a Claim or Equity Interest junior to Classes 1G, 2G, 3G, 4G, 5G, and 1H that will receive or retain any property under the Plan on account of such junior Claim or Equity Interest. As such, the treatment afforded non-consenting Holders of Claims or Equity Interests in Classes 1G, 2G, 3G, 4G, 5G, and 1H, respectively, comports with section 1129(b)(2)(C) of the Bankruptcy Code. Accordingly, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by Classes 1G, 2G, 3G, 4G, 5G, and 1H.

R. <u>Treatment of Administrative Expense and Priority Claims</u>. The treatment of Administrative Expense Claims and Priority Tax Claims under Section 3.1(a) and (b) of the Plan satisfies the applicable requirements of section 1129(a)(9) of the Bankruptcy Code.

S.    <u>Acceptance by at Least One Impaired Class</u>.  As set forth in the Voting Report, Classes 3C, 4C, 5C, 2D, 3D, 4D, 5D, 2E, 1F, 2F, 3F, 4F, and 5F, each of which are Impaired under the Plan, have voted to accept the Plan in requisite numbers and amounts, without the inclusion of any acceptance of the Plan by any insider.  Accordingly, at least one Class of Claims that is Impaired under the Plan has accepted the Plan, in compliance with section 1129(a)(10) of the Bankruptcy Code.

T.    <u>Feasibility</u>.  The Debtors have demonstrated that the Plan is feasible.  The information contained in the Disclosure Statement, the Supplement, and the Goegebuer Declaration (i) is persuasive and credible, (ii) has not been controverted by other evidence or challenged in any objection, and (iii) establishes that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of Reorganized Truvo (except as contemplated in the Plan), thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.  Goegebuer Decl. ¶¶ 16-19.

U.    <u>Payment of Fees</u>.  All fees payable pursuant to section 1930 of title 28, United States Code, as determined by the Bankruptcy Court, have been paid or shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first, pursuant to Section 12.5 of the Plan.  Thus, the requirements of section 1129(a)(12) of the Bankruptcy Code are satisfied.

V.    <u>Continuation of Retiree Benefits</u>.  Except as otherwise expressly provided in the Plan, pursuant to Section 7.5 of the Plan, all employment and severance policies, and all compensation and benefit plans, policies and programs of the Debtors applicable to their employees, retirees and non-employee directors and the employees and retirees of their subsidiaries, including, without limitation, all compensation, incentive and bonus plans, savings

plans, retirement plans, healthcare plans, disability plans, severance benefit plans, life and accidental death and dismemberment insurance plans, are treated as executory contracts and, on the Effective Date, will be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code. Thus, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

W. <u>Principal Purpose</u>. No party in interest that is a governmental unit has requested that the Court not confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (as amended, the "<u>Securities Act</u>"), 15 U.S.C. § 77e, and the principal purpose of the Plan is not such avoidance. <u>See</u> Goegebuer Decl. ¶¶ 7-15. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

X. <u>Discharge; Injunction; Exculpation; Releases</u>. The provisions in Sections 10.2, 10.3, 10.5, and 10.6 of the Plan are fair and necessary to the reorganization of the Debtors. The Confirmation Hearing Notice, Disclosure Statement, Plan, Supplement, Ballots and Amended Ballots furnished to Creditors and Equity Interests provided ample notice of the releases contained in Article X of the Plan, and that such releases will be effective as of the Effective Date.

Y. The terms of Sections 10.2, 10.3, 10.5 and 10.6 of the Plan are appropriate and proper because, among other things, they are integral to the Plan and are the product of arms-length negotiations and have been critical to obtaining the support of the various constituencies for the Plan as reflected in the Plan Support Agreement and Plan Settlement Agreement. Goegebuer Decl. ¶¶ 23-28. Such release, exculpation, and injunction provisions are fair and equitable, reasonable, in good faith, and in the best interests of the Debtors, their estates,

17

these Chapter 11 Cases, and other parties in interest. Each of the Released Parties has made substantial contributions to the reorganization of the Debtors, and such contributions are, and are hereby deemed to be, sufficient and valuable consideration provided to support the releases. The releases are integral to the structure of the Plan and formed part of the agreement among all parties in interest embodied thereby. Id. ¶ 23.

Z. The record of the Confirmation Hearing and these Chapter 11 Cases are sufficient to support the release, injunction and exculpation provisions contained in Article X of the Plan. Further, the releases and exculpation provisions do not relieve any party of any liability for acts or omissions constituting intentional fraud, gross negligence, willful misconduct or criminal conduct as determined by a Final Order of a court of competent jurisdiction. None of the releases, the injunction, the exculpation provisions, nor any other provisions of the Plan are inconsistent with the Bankruptcy Code and, thus the requirements of section 1123(b) of the Bankruptcy Code are satisfied.

AA. The Released Parties are each entitled to the protections set forth in the exculpation provision in Section 10.5 of the Plan. The Court finds that such exculpation provisions are appropriately limited.

BB. The injunction set forth in Section 10.6 is necessary to preserve and enforce the releases granted under the Plan and is narrowly tailored to achieve that purpose.

CC. The failure to implement the releases, the injunctions and exculpation provisions would seriously impair the Debtors' ability to confirm and consummate the Plan.

DD. Modifications to the Plan. To the extent the terms of this Confirmation Order are, or may be construed to constitute, modifications to the Plan ("Modifications"), such Modifications do not materially or adversely affect or change the treatment of any Claim against,

or Equity Interest in, any Debtor. Accordingly, pursuant to Bankruptcy Rule 3019, any Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code nor the solicitation of acceptances or rejections under section 1126 of the Bankruptcy Code. Disclosure of Modifications on the record at the Confirmation Hearing constitutes due and sufficient notice thereof under the circumstances of the Chapter 11 Cases. All references to the Plan in this Confirmation Order shall be to the Plan as so modified.

Furthermore, any Modifications made to the Plan as filed on October 5, 2010 [Docket No. 247] do not materially or adversely affect or change the treatment of any Claim against, or Equity Interest in, any Debtor. Accordingly, pursuant to Bankruptcy Rule 3019, such Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code nor the solicitation of acceptances or rejections under section 1126 of the Bankruptcy Code.

EE. <u>Good Faith Participation</u>. Based upon the record before the Court, the Released Parties, and each of their respective counsel, agents, and financial advisors have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the offer, issuance, sale or purchase of securities in connection with the Plan and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpatory and injunctive provisions set forth in Article X of the Plan. <u>See</u> Goegebuer Decl. ¶¶ 7-15; Burian Decl. ¶¶ 8-16.

FF. <u>Satisfaction of Conditions to Confirmation</u>. By entry of this Confirmation Order, the conditions to confirmation referenced in Section 9.1 of the Plan are satisfied.

GG. <u>The Financial Restructuring</u>. The restructuring transactions contemplated by the Plan, including without limitation the transactions set forth in Section 5.3 of the Plan, are

essential elements of the Plan, are critical to the success and feasibility of the Plan and are necessary and appropriate for the consummation of the Plan, and such transactions are in the best interests of the Debtors, the Reorganized Truvo Group, their non-debtor affiliates, the Debtors' estates, and their respective creditors. Based on the record before the Bankruptcy Court, the Truvo Entities, the CoComm and each of its members, the Elliott Lender, the Creditors Committee and each of its members, the Senior Agent under the Senior Facility Agreement, and the Security Agent under the Intercreditor Agreement, and their respective directors, officers, employees, financial advisors, attorneys, and other professionals and agents have, and are hereby deemed to have, acted reasonably and in good faith in any and all actions taken in connection with such restructuring transactions, including, without limitation, the TUSA Sale and the Release contemplated thereunder, and effectuation of the Plan.

HH.     The Debtors provided sufficient and adequate notice of such restructuring transactions and the effects thereof, including, without limitation the transactions contemplated by Section 5.3 of the Plan. All parties in interest in these Chapter 11 proceedings and related transactions have had notice of these restructuring transactions and none have objected. The absence of any objection shall be deemed to constitute consent, including in the absence of a vote on the Plan.

II.     <u>The TUSA Sale.</u>

(i)     The evidence proffered, adduced or presented at the Confirmation Hearing provides sufficient support for findings, and the Court so finds, that the Debtors gave due and proper notice and an opportunity to be heard to all interested parties of the Purchase Agreement and the transactions contemplated thereby. The Debtors, in consultation with their financial advisors, determined in their business judgment that a formal marketing process was

unlikely to yield any prospect of superior recoveries than that offered under the Purchase Agreement in light of market conditions. Burian Decl. ¶ 5. Prior to the Petition Date, neither the Debtors nor their financial advisors received any credible offers from potential purchasers or investors in the Debtors or their assets, even though it was publicly known, as evidenced by various public disclosures and press reports since October 2009, that the Truvo Group was engaged in restructuring discussions. Id. Following the filing of the Disclosure Statement, neither the Debtors nor their financial advisors received any expressions of interest from potential purchasers or investors in the Debtors or their assets, despite published reports concerning these Chapter 11 Cases and the Debtors' willingness, as expressed in the Disclosure Statement, to consider competing offers. Id. ¶ 6. The Debtors determined in their business judgment that the Purchase Agreement presents the best opportunity to realize the highest value for the TUSA Equity Interests, taking into account all relevant factors.

(ii) The consideration provided by the Purchaser for the TUSA Equity Interests pursuant to the Purchase Agreement, Funds Flow Agreement, and all other transaction documents referenced in the Purchase Agreement (x) is consistent with the valuation set forth in the Disclosure Statement, (y) is fair and reasonable and (z) constitutes "reasonably equivalent value" and "fair consideration" (as such terms are used in each of the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act and section 548 of the Bankruptcy Code). See Burian Decl. ¶ 7, 17.

(iii) Neither the Purchase Agreement, the Funds Flow Agreement, the Daylight Facility nor any of the other transaction documents was entered into fraudulently, for the purpose of hindering, delaying or defrauding the Debtors' creditors or for any other improper purpose.

(iv)     The Purchase Agreement and all of the transactions related thereto were negotiated and have been and are undertaken by the Debtors, the Purchaser (as defined in the Purchase Agreement), the CoComm, the Elliott Lender and their respective agents, counsel and advisors at arm's length, without collusion and in good faith within the meaning of section 363(m) of the Bankruptcy Code.  See Goegebuer Decl. ¶¶ 7-13.  As a result of the foregoing, the Debtors and the Purchaser are entitled to the protections of section 363(m) of the Bankruptcy Code.  Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code.

(v)     A sale of the TUSA Equity Interests other than one free and clear of Interests (as defined herein), except for those Interests expressly permitted by the Purchase Agreement, would impact materially and adversely the Debtors' Estates, would yield substantially less value for the Debtors' Estates, with less certainty than the available alternatives and thus the alternatives would be of substantially less benefit to the Estates of the Debtors.  A sale of the TUSA Equity Interests without the benefit of the Release would likely yield no value for the Debtors' Estates because the TUSA Equity Interests would be sold subject to all of the Senior Debt Claims and HY Notes Claims against TUSA and its non-debtor subsidiaries.  See Burian Decl. ¶ 7.  In reaching this determination, the Court has taken into account both the consideration to be realized directly by the Debtors and the indirect benefits of the TUSA Sale. Therefore, the TUSA Sale is in the best interests of the Debtors and their Estates, creditors and other parties in interest, including in their capacities as creditors of the Debtors' subsidiaries that did not commence chapter 11 cases.

(vi)     The transfer of the TUSA Equity Interests to the Purchaser will be a legal, valid and effective transfer of the TUSA Equity Interests and will vest the Purchaser with

all rights, title and interests of the Debtors to the TUSA Equity Interests, free and clear of all Interests except for those Interests expressly permitted by the Purchase Agreement.

JJ.    The TAC Sale.

(i)    The evidence proffered, adduced or presented at the Confirmation Hearing, provides sufficient support for findings, and the Court so finds, that the HY Notes Issuer gave due and proper notice and an opportunity to be heard to all interested parties of the TAC Purchase Agreement and the transactions contemplated thereby. The consideration provided by the Purchaser for the TAC Equity Interests pursuant to the TAC Purchase Agreement and any other transaction documents provided for in the TAC Purchase Agreement (x) is fair and reasonable, and (y) constitutes "reasonably equivalent value" and "fair consideration" (as such terms are used in each of the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act and section 548 of the Bankruptcy Code) under the circumstances. See Burian Decl. ¶ 18.

(ii)    Neither the TAC Purchase Agreement nor any other transaction documents was entered into fraudulently, for the purpose of hindering, delaying or defrauding the HY Notes Issuer's creditors or for any other improper purpose.

(iii)    The TAC Purchase Agreement and all of the transactions related thereto were negotiated and have been and are undertaken by the HY Notes Issuer, Newco, the CoComm, Elliott Lender and their respective agents, counsel and advisors at arm's length, without collusion and in good faith within the meaning of section 363(m) of the Bankruptcy Code. As a result of the foregoing, the HY Notes Issuer and Newco are entitled to the protections of section 363(m) of the Bankruptcy Code. Neither the HY Notes Issuer nor Newco

have engaged in any conduct that would cause or permit the TAC Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code.

(iv)     A sale of the TAC Equity Interests other than one free and clear of Interests (as defined herein) except for those Interests expressly permitted by the TAC Purchase Agreement would impact materially and adversely the Debtors' Estates, would yield substantially less value for the Debtors' Estates, with less certainty than the available alternatives and thus the alternatives would be of substantially less benefit to the Estates of the Debtors.  In reaching this determination, the Court has taken into account both the consideration to be realized directly by the Debtors and the indirect benefits of such sale.  Therefore, the sale contemplated by the TAC Purchase Agreement is in the best interests of the Debtors and their Estates, creditors and other parties in interest, including in their capacities as creditors of the Debtors' subsidiaries that did not commence chapter 11 cases.

(v)     The transfer of the TAC Equity Interests to Newco will be a legal, valid and effective transfer of the TAC Equity Interests and will vest Newco with all rights, title and interests of the HY Notes Issuer to the TAC Equity Interests free and clear of all Interests except for those Interests expressly permitted by the TAC Purchase Agreement.

KK.     <u>Execution of Certain Documents</u>.  The execution of Mandatory Transfer Certificates and the execution of documents effectuating the New Senior Credit Agreement, the New PIK Agreement, New Intercreditor Agreement, the Shareholders' Agreement and all other documents set forth or contemplated in the Plan or Amended Plan Supplement is necessary for the consummation of the Plan and the transactions contemplated therein.

LL.     <u>Valuation.</u>  The valuation analysis contained in the Disclosure Statement and the implied reorganization equity value set forth therein are reasonable and credible, and the

consolidated enterprise value represents the fair market value of the Reorganized Truvo Group. Disclosure Statement, Section VI.C.3; see also Burian Decl. ¶ 17.  All parties in interest have been given the opportunity to challenge the valuation analysis, and no one has disputed it.

MM.    Waiver of Stay.  The Debtors have made a sufficient and uncontroverted showing of substantial cost and harm that would result if the Plan is not consummated as soon as practicable after entry of the Confirmation Order.

## DECREES

**NOW THEREFORE IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:**

1.    Confirmation.  The Plan is confirmed under section 1129 of the Bankruptcy Code, and the Debtors are authorized and directed to make all distributions required under the Plan and to take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan.  The terms of the Plan and the exhibits thereto, including, without limitation, the exhibits contained in the Amended Plan Supplement (including any non-material amendments, modifications, or supplements to the exhibits comprising the Amended Plan Supplement at any time prior to the Effective Date, which shall be filed with the Court), are incorporated by reference into, and are an integral part of, the Plan and this Confirmation Order.

2.    Compliance with Applicable Provisions of Bankruptcy Code.  The Plan complies with each of the requirements of sections 1122, 1123 and 1129 of the Bankruptcy Code.

3.    Objections.  No objections to the Plan were filed with the Court or served upon the Debtors prior to the applicable objection deadline.  All parties-in-interest including, without limitation, the HY Notes Indenture Trustee, the PIK Agent, and the Creditors Committee

have had a full and fair opportunity to litigate all issues raised, or that might have been raised, by the objections, including, without limitation, any objections that could have been raised to the Plan, the transactions contemplated therein, and the terms and conditions of any documents contained in the Amended Plan Supplement or related thereto. Any objection that has been withdrawn is deemed withdrawn with prejudice in its entirety.

4.     Plan Classification Controlling. The classification of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.

5.     Releases. The releases set forth in Sections 10.2(a) and 10.2(b) of the Plan, effective as of the Effective Date, are hereby ordered and approved.

6.     Discharge of Claims. Except as otherwise expressly provided by the Plan or provided herein, (1) all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims of any kind or nature whatsoever against the Debtors or any of their assets or properties and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims; (2) the Plan shall bind all Holders of Claims and Interests, notwithstanding whether any such Holders failed to vote on the Plan or voted to reject the Plan; and (3) all Persons shall be precluded from asserting against the Debtors, the Debtors' Estates, Reorganized Truvo, their successors and assigns, and their assets and properties any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date. Except as otherwise expressly provided by the Plan or provided herein, upon the Effective Date, the Debtors, and each of them, shall be deemed discharged and released from any and all Claims of any kind or nature

whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code. This Confirmation Order shall constitute a finding that none of the exceptions to discharge listed under section 1141(d)(3) of the Bankruptcy Code apply.

7. <u>Exculpation and Limitation of Liability</u>. The exculpation and limitation of liability as set forth in Section 10.5 of the Plan are hereby ordered and approved.

8. <u>Injunction</u>. Except as otherwise provided in the Plan or in any document, instrument, release or other agreement entered into in connection with the Plan or approved by order of the Bankruptcy Court, from and after the Effective Date all Persons or Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtors are permanently enjoined from taking any of the following actions against any of the Debtors, their successors, any of the Estates, the Reorganized Truvo Group or their respective property on account of such Claims or Equity Interests: (A) commencing or continuing, in any manner or in any place, any action or other proceeding; (B) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting, or enforcing any Lien or encumbrance; (D) asserting a setoff or right of subrogation of any kind against any debt, liability or obligation due to the Debtors; and (E) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; <u>provided</u>, <u>however</u>, that nothing contained herein shall preclude such Persons or Entities from exercising their rights pursuant to and consistent with this Confirmation Order, the terms of the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered under or in connection with the Plan.

9.      By voting to accept the Plan, failing to vote on the Plan or accepting distributions pursuant to the Plan, such Holder of an Allowed Claim will be deemed to have specifically consented to the injunctions set forth in Section 10.6 of the Plan and this Confirmation Order.

10.      <u>TUSA Sale and the Financial Restructuring</u>.  On or before the Effective Date, without further motion to or order of the Bankruptcy Court, the Debtors, the Truvo Entities, the Security Agent, the Senior Agent and all other persons required to take such actions (including, without limitation, the persons named in Section 5.7 of the Plan) are authorized to perform all of their obligations under the Plan, the Plan Support Agreement, the Funds Flow Agreement, and the Purchase Agreement and shall, subject to the satisfaction or waiver of each of the relevant Senior Agent Conditions Precedent and each of the relevant Security Agent Conditions Precedent, as applicable, effectuate the transactions set forth in Section 5.3(e) of the Plan constituting the TUSA Sale and other transactions related to the Financial Restructuring; provided that, for the avoidance of doubt, the HY Noteholder Cash Distribution shall be distributed in accordance with Section 6.4(a)(iv) and Section 6.7 of the Plan.

11.      Without limiting the generality of the foregoing, on the Effective Date, without further motion to, or order of, this Court, subject to satisfaction or waiver of each of the relevant Senior Agent Conditions Precedent, each of the relevant Security Agent Conditions Precedent and each of the conditions precedent to the Effective Date listed in Section 9.3 of the Plan, all transactions and events described in and contemplated by Section 5.3(e)(ii) are approved and authorized; provided that, for the avoidance of doubt, the HY Noteholder Cash Distribution shall be distributed in accordance with Section 6.4(a)(iv) and Section 6.7 of the Plan.

12. <u>Amended Plan Supplement</u>. All exhibits that comprise the Amended Plan Supplement are hereby authorized and approved.

13. <u>Automatic Stay</u>. Without further motion to, or order of, this Court (subject to satisfaction or waiver of each of the relevant Senior Agent Conditions Precedent and each of the relevant Security Agent Conditions Precedent), the automatic stay and any preliminary injunction entered in the Chapter 11 Cases is hereby modified to permit acceleration of the Senior Loans and the making of a demand under the Senior Guarantee Claims against TAC by the Senior Agent as provided in the Instructions.

14. <u>Transfer of Claims</u>. Pursuant to the Plan each Holder of an Allowed Senior Debt Claim (as of the Distribution Record Date) shall transfer its Senior Debt Claims against TAC to Newco in exchange for a Pro Rata Share of (a) the Senior Lender Debt Distribution, (b) the Senior Lender Equity Distribution, and (c) the MIP Equityco Warrants.

15. <u>Mandatory Transfer Certificates</u>. Prior to the Effective Date, without further motion to, or order of, this Court, all Senior Lenders, as of the date hereof and thereafter, and Newco are hereby ordered (if they have not already done so) to execute Mandatory Transfer Certificates and promptly deliver such certificates by hand, overnight delivery or mail to the Debtors' counsel, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, Attention: Sean A. O'Neal, Esq. Any Senior Lender that fails to execute a Mandatory Transfer Certificate after receiving notice of this Confirmation Order may be held in contempt of court upon notice and an opportunity for a hearing. Such Mandatory Transfer Certificates will (subject to the satisfaction or waiver of each of the relevant Senior Agent Conditions Precedent and each of the relevant Security Agent Conditions Precedent) become effective at the time specified therein.

16.     <u>The Enforcement Action Pursuant to the Intercreditor Agreement</u>.  The Senior Agent's request to TAC to sell its Equity Interests in TUSA made pursuant to the instructions of the Majority Lenders, in accordance with the Plan, and in connection with the acceleration of the Senior Loans and the demand made on TAC pursuant to the Senior Guarantee Claim (which acceleration and demand constitute Enforcement Actions as defined under the Intercreditor Agreement), satisfies the conditions set out in paragraph (a)(ii) of Clause 22.4 of the Intercreditor Agreement.  Mortimore Decl. ¶¶ 5, 7-13, 22-49.

17.     <u>Release by Security Agent</u>.  The purchase of the Equity Interests in TUSA by Newco pursuant to the Purchase Agreement using funds provided pursuant to the Daylight Facility constitute a sale of the TUSA Equity Interests, the proceeds of which are in cash.  The cash proceeds of the sale of Equity Interests in TUSA are to be distributed in accordance with the Plan and the Funds Flow Agreement, which is in accordance with the waterfall set out in Clause 21.1 of the Intercreditor Agreement.  Upon the receipt of a certification from Nomura International plc, the investment bank selected by the Security Agent in accordance with the terms of the Intercreditor Agreement, stating that the sale by TAC of the Equity Interests in TUSA is made for fair market value (taking into account the circumstances giving rise to such sale or disposal), the conditions set forth in paragraph (b)(iii) of Clause 22.4 of the Intercreditor Agreement shall be satisfied.  <u>See generally</u> Mortimore Decl.  The Senior Agent and the Security Agent are entitled to rely upon such determination in effectuating the Release, the TUSA Sale and related transactions.

18.     Pursuant to Clause 22.4 of the Intercreditor Agreement, the Release granted by the Security Agent in connection with the TUSA Sale shall effect the unconditional release and discharge as of the Effective Date of (A) TUSA and its subsidiaries from all its past,

present and future liabilities and/or obligations (both actual and contingent) as a borrower and guarantor of the whole of the Senior Debt and the High Yield Notes Guarantee Debt (including any liability to any member of the Group by way of guarantee or contribution), (B) all Security granted by TUSA and its subsidiaries over any asset under any Security Document, and (C) the Security created pursuant to the Security Documents over the Equity Interests in TUSA. Mortimore Decl. ¶¶ 47-49. For the avoidance of doubt, the foregoing shall not effect a release or discharge of obligations under the Plan of any of the Debtors, Reorganized Truvo, or the Disbursing Agent.

19. <u>Actions of the Security Agent and the Senior Agent</u>. The Security Agent and the Senior Agent, pursuant to the terms and conditions of the Senior Facility Agreement and the Intercreditor Agreement, the Plan and this Confirmation Order and subject to the satisfaction or waiver of the Senior Agent Conditions Precedent and the Security Agent Conditions Precedent, as applicable, are authorized to take any and all actions reasonably necessary or desirable to effectuate the Enforcement Action, the TUSA Sale and the other transactions contemplated under the Plan or this Confirmation Order.

20. <u>The Purchase Agreement</u>. The terms and conditions of the Purchase Agreement, the transactions set forth therein, and the Debtors' performance of all of their obligations under the Purchase Agreement are approved and authorized under sections 105, 363(b), 363(f), 1123(b)(4) and 1141(c) of the Bankruptcy Code and this Confirmation Order. The Purchase Agreement may be modified, amended, or supplemented by agreement of the signatories thereto without further action of the Court, provided that any such modification, amendment, or supplement is not material and substantially conforms to and effectuates the Plan, the Purchase Agreement and this Confirmation Order.

21.     The payment of the Cash Purchase Price in accordance with the Plan, this Confirmation Order and the Debtors' entry into the Funds Flow Agreement is approved and authorized.  Without limiting the generality of the foregoing, on the Effective Date (a) Newco is authorized to draw down under the Daylight Facility by directing the Daylight Lender to pay TAC the Cash Purchase Price for the purchase of the TUSA Equity Interests; (b) TAC shall receive the proceeds of the Cash Purchase Price in full and shall pay them over to the Senior Agent on account of TAC's liabilities as guarantor in respect of the Senior Facility Agreement; and (c) the Senior Agent shall pay the proceeds of the Cash Purchase Price in full, at the direction of Newco (as transferee of the Senior Lenders' claim under the TAC Guarantee), to repay the Daylight Facility.

22.     Upon the prior written request of the Debtors and no later than five (5) Business Days before the projected Effective Date, the HY Notes Indenture Trustee, Senior Agent, and Security Agent shall each send an invoice to the Debtors confirming the amount of any unpaid costs, expenses or other amounts incurred as of such date, plus all such amounts projected through the projected Effective Date to which they would be entitled to be paid in accordance with Clause 21.1 of the Intercreditor Agreement.  The HY Notes Indenture Trustee, the Senior Agent, and the Security Agent shall confer with the Debtors in good faith to determine and confirm the correct amount owed projected through the Effective Date.  Any overpayment by the Debtors shall be returned to the Debtors no later than thirty (30) days after the Effective Date.

23.     Except as expressly permitted in the Purchase Agreement, pursuant to sections 105(a), 363(f), 1123(a)(5)(D), 1123(b)(4) and 1141(c) of the Bankruptcy Code, the TUSA Equity Interests shall be transferred to the Purchaser and, as of the Effective Date, shall be

free and clear of all Liens, encumbrances, Claims, liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, and interests (collectively, "Interests"), whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise.

24.     Except as set forth in the Purchase Agreement, the Purchaser shall have no liability or responsibility for any liability or other obligations of the Debtors arising under or related to the TUSA Equity Interests.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Purchase Agreement, the Purchaser shall not be liable for any claims against the Debtors or any of their predecessors or Affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any such liability that may be imposed by statute (e.g., under the so-called bulk sales' laws) or any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, product line or substantial continuity whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the TUSA Equity Interests, the Debtors or any of their Affiliates, the Reorganized Debtors, or any obligations of the Debtors or any of their Affiliates arising prior to the Closing.

25.     Except for those Interests expressly permitted by the Purchase Agreement, the sale, transfer, assignment and delivery of the TUSA Equity Interests shall not be subject to any Interests, and Interests of any kind or nature whatsoever shall remain and continue to be the obligations of the Debtors.  All Persons holding any Interests in or against the TUSA Equity Interests (except for those Interests expressly permitted by the Purchase Agreement) or in the Debtors of any kind or nature whatsoever (including, but not limited to, the Debtors and/or their respective successors, including any trustee's thereof, creditors, employees, unions, former

employees and shareholders, administrative agencies, governmental units, secretaries of state, federal, state, local, and foreign officials, maintaining any authority relating to any environmental, health and safety laws and their respective successors or assigns) shall be, and are, forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing the Purchaser, the Debtors or their respective Related Persons in respect of such Interests of any kind or nature whatsoever such Person or entity had, has, or may have against or in the Purchaser, the Debtors or their respective Related Persons, or the Equity Interests. Following the closing of the transactions contemplated by the Purchase Agreement, no holder of such Interest shall interfere with the Purchaser's title to or use and enjoyment of the TUSA Equity Interests based on or related to such Interest, or any action the Debtors may take in the Chapter 11 Cases.

26.    TAC Sale.  TAC and the HY Notes Issuer are hereby authorized to enter into and perform all of their obligations under the TAC Purchase Agreement on the Effective Date, after the completion of the TUSA Sale, in accordance with Section 5.4 of the Plan without further motion to, or order of, this Court.  Reorganized Truvo will be sold to Newco free and clear of all Claims, Liens, or other liabilities pursuant to the TAC Purchase Agreement and the Plan.  In exchange for the Equity Interests in Reorganized Truvo, Newco shall pay €1.00 in cash consideration as set forth in the TAC Purchase Agreement.

27.    The terms and conditions of the TAC Purchase Agreement and the transactions set forth therein are approved and authorized under sections 105, 363(b), 363(f), 1123(b)(4) and 1141(c) of the Bankruptcy Code and this Confirmation Order.  The TAC Purchase Agreement may be modified, amended, or supplemented by agreement of the signatories thereto without further action of the Court, provided that any such modification,

amendment, or supplement is not material and substantially conforms to and effectuates the Plan, the TAC Purchase Agreement and this Confirmation Order.

28.     Except as expressly permitted in the TAC Purchase Agreement, pursuant to sections 105(a), 363(f), 1123(a)(5)(D), 1123(b)(4) and 1141(c) of the Bankruptcy Code, TAC's Equity Interests shall be transferred to Newco and, as of the Effective Date, shall be free and clear of all Interests, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise.

29.     Except as set forth in the TAC Purchase Agreement, Newco shall have no liability or responsibility for any liability or other obligations of the HY Notes Issuer arising under or related to the TAC Equity Interests.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the TAC Purchase Agreement, Newco shall not be liable for any claims against the HY Notes Issuer or any of its predecessors or Affiliates, and Newco shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any such liability that may be imposed by statute (e.g., under the so-called bulk sales' laws) or any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, product line or substantial continuity whether known or unknown as of the closing of the transaction contemplated by the TAC Purchase Agreement, now existing or hereafter arising, whether fixed or contingent, with respect to the TAC Equity Interests, the HY Notes Issuer or any of its Affiliates, or any obligations of the HY Notes Issuer or any of its Affiliates arising prior to the closing of the transaction contemplated by the TAC Purchase Agreement.

30.     Except for those Interests expressly permitted by the TAC Purchase Agreement, the sale, transfer, assignment and delivery of the TAC Equity Interests shall not be

subject to any Interests, and Interests of any kind or nature whatsoever shall remain and continue to be the obligations of the HY Notes Issuer. All Persons holding any Interests in or against the TAC Equity Interests (except for those Interests expressly permitted by the TAC Purchase Agreement) or in the HY Notes Issuer of any kind or nature whatsoever (including, but not limited to, the Debtors and/or their respective successors, including any trustee's thereof, creditors, employees, unions, former employees and shareholders, administrative agencies, governmental units, secretaries of state, federal, state, local, and foreign officials, maintaining any authority relating to any environmental, health and safety laws and their respective successors or assigns) shall be, and are, forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing Newco, the HY Notes Issuer or their respective Related Persons in respect of such Interests of any kind or nature whatsoever such Person or entity had, has, or may have against or in Newco, the HY Notes Issuer or their respective Related Persons, or the TAC Equity Interests. Following closing of the transaction contemplated by the TAC Purchase Agreement, no holder of such Interest shall interfere with Newco's title to or use and enjoyment of the TAC Equity Interests based on or related to such Interest, or any action the HY Notes Issuer may take in the Chapter 11 Cases.

31.     Liquidation of Debtors. TUSA, and each of the Debtors other than TAC, shall be liquidated pursuant to the Plan on the Effective Date, immediately after the completion of the TUSA Sale and the transactions contemplated under Section 5.3(e) of the Plan. Pursuant to this Confirmation Order, a certificate of cancellation or dissolution, as applicable for each Debtor, except TAC, will be filed with Delaware's Secretary of State immediately after the Effective Date. Such dissolution shall become effective in accordance with this Confirmation

Order and section 303(c) of the General Corporation Law of the State of Delaware without requiring any further corporate action by the Debtor's directors or shareholders.

32.     In accordance with the Plan, Reorganized Truvo shall remain in existence solely to (a) serve as a collection agent for the Debtors for the purpose of prosecuting and collecting any U.S. tax refunds of the Debtors (including, without limitation the Tax Refund, if any), (b) take actions as required under the Plan (including, without limitation, the making of all distributions required to be made pursuant to the Plan and the actions required by Section 5.6(b)(viii) of the Plan), and (c) fulfill its mandate as proxy pursuant to the Plan. Reorganized Truvo will be liquidated pursuant to the Plan following (a) the remittance of the Collected Tax Refund and prepayment of the New Bank Debt in accordance with Section 11.3(d) of the New Senior Credit Agreement, and the distribution of the HY Noteholder Tax Refund Allocation in accordance with Section 3.5(d)(ii)(a) and Section 5.6(b)(viii) of the Plan, and (b) the completion of all actions by it required under the Plan. The liquidation of Reorganized Truvo shall be effective pursuant to the Plan and this Confirmation Order without any further action by the stockholders, members, or directors of Reorganized Truvo. In accordance with Section 303(c) of General Corporation Law of the State of Delaware and pursuant to this Confirmation Order, a certificate of dissolution for Reorganized Truvo will be filed with Delaware's Secretary of State immediately thereafter.

33.     TAC Representation Powers. TAC is hereby authorized to take the actions identified in Section 5.7(a) of the Plan on the Effective Date, without prejudice to the generality of Section 12.2 of the Plan and more specific provisions in the Plan, on behalf of all Senior Lenders; and (b) TAC is hereby authorized to take the actions listed in Section 5.7(b) of the Plan

on the Effective Date, without prejudice to the generality of Section 12.2 of the Plan and more specific provisions in the Plan, on behalf of all HY Noteholders and the PIK Lenders.

34.    <u>TAC as Collection Agent</u>.  On the Effective Date, Truvo Parent's designation of TAC as collection agent for each of the Debtors for purposes of prosecuting and collecting any U.S. tax refunds of the Debtors (including, without limitation, the Tax Refund, if any) shall become effective.

35.    <u>Other Restructuring Transactions</u>.  On or after the Effective Date, without limiting any rights and remedies of the Debtors or the Reorganized Truvo Group under the Plan or applicable law and without further motion to or order of this Court, the Reorganized Truvo Group is authorized to enter into the Restructuring Transactions described in and contemplated by Section 5.6 of the Plan and take such actions as may be necessary or appropriate to effect a corporate restructuring of their respective businesses, to otherwise simplify the overall corporate structure of the Reorganized Truvo Group.  Such restructuring may include one or more mergers, consolidations, restructures, dispositions, liquidations or dissolutions, as may be determined by the Reorganized Truvo Group to be necessary or appropriate, subject to this Confirmation Order, the terms of the Plan, the Plan Support Agreement, the Plan Settlement Agreement, the New Bank Debt, the Shareholders' Agreement, and the Purchase Agreement.

36.    <u>Release of all Interests</u>.  If any Person or entity that has filed financing statements, mortgages, mechanics liens, *lis pendens*, or other documents or agreements evidencing Interests in the Debtors or any of their properties as of the Effective Date shall not have delivered to the Debtors prior to the Closing, in proper form for filing executed by the appropriate parties, termination statements, instruments of satisfaction, release of all Interests which the Person or entity has with respect to the Debtors or such properties, or otherwise, then

the Debtors are, respectively, (a) authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the Person or entity with respect to such properties, and (b) authorized to file, register or otherwise record a certified copy of this Confirmation Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests in such properties of any kind or nature whatsoever.

37. <u>Assumption, Assignment and Rejection of Contracts</u>. Pursuant to Section 7.1 of the Plan, on the Effective Date only executory contracts of the Debtors that are identified on <u>Exhibit C</u> to the Plan as Assumed Contracts (or referenced in Section 7.5 of the Plan) will be deemed assumed and assigned to Truvo Belgium in accordance with and subject to the provisions and requirements of Sections 363, 365 and 1123 of the Bankruptcy Code. All other executory contracts and unexpired leases of the Debtors shall be deemed rejected as of the Effective Date pursuant to Section 7.1(a). Entry of this Confirmation Order shall constitute approval of such assumptions, assignments and rejections pursuant to Sections 365(a), 365(f) and 1123 of the Bankruptcy Code and Section 7.1 of the Plan.

38. <u>Cure Amounts</u>. The Cure Amounts set forth on <u>Exhibit C</u> to the Plan are hereby authorized to be paid by the applicable Debtor and shall constitute findings of the Court and shall be final and binding on parties to such Assumed Contracts (and their successors and designees), and shall not be subject to further dispute or audit based on performance prior to the time of assumption and assignment, irrespective of whether such Assumed Contract contains an audit clause. For the Assumed Contracts marked with asterisks in the Cure Amount column set forth on <u>Exhibit C</u> to the Plan, the Debtors and the counterparties shall confer in good faith to determine the cure amount. If the Debtors and the counterparties are unable to reach a resolution

of such cure amount, either of such parties may apply to the Court for an order, upon notice and a hearing, determining the correct cure amount.

39. As of the Effective Date, each Assumed Contract shall be in full force and effect and free from default (other than for specified Cure Amounts that have not been paid as of the date hereof) and enforceable against the non-debtor party thereto in accordance with its terms. To the extent any provision in any Assumed Contract restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the applicable reorganized entity's assumption or assignment of such Assumed Contract, then such provision shall be and is hereby void and unenforceable, and such provision shall not entitle the non-debtor party to an Assumed Contract to terminate such Assumed Contract or to exercise any other default-related rights with respect thereto.

40. <u>Transfer of Contracts</u>. The Debtors are authorized to assign to Truvo Belgium each Assumed Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the party to such Assumed Contract to terminate, recapture, impose any penalty, exercise any right of first refusal or offer, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect. Any provision contained in an Assumed Contract that purports to give rise to a default or other breach by reason of the commencement of the Chapter 11 Cases, the assignment of the relevant Assumed Contract, or the consummation of the Purchase Agreement shall be and is hereby void and unenforceable. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the applicable Debtor and/or the assignment to Truvo

Belgium, as applicable, of each Assumed Contract have been satisfied, and upon the Effective Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Debtors shall be fully and irrevocably vested with all right, title and interest of each Assumed Contract.

41.     Adequate Assurance of Future Performance.  The Debtors have demonstrated adequate assurance of future performance with respect to the Assumed Contracts and have satisfied the requirements of the Bankruptcy Code, including, without limitation, sections 365(b)(1) and 365(f)(2)(B) to the extent applicable.  See Goegebuer Decl. ¶¶ 20-22.

42.     There shall be no accelerations, assignment fees, increases or any other fees charged to the Debtors, the Reorganized Truvo Group or any designee of the foregoing as a result of the assumption, assignment and sale of the Assumed Contracts.  The validity of the assumption and/or assignment shall not be affected by any dispute between any of the Debtors or their affiliates and another party to an Assumed Contract regarding the payment of any amount, including any Cure Amount under the Bankruptcy Code.  The Assumed Contracts, upon assignment to Truvo Belgium or its designee, shall and shall be deemed valid and binding, in full force and effect in accordance with their terms.

43.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all non-debtor parties to the Assumed Contracts are forever barred, estopped and enjoined from raising or asserting against the Debtors, the Reorganized Truvo Group, the Purchaser or any designee of any of the foregoing, or the property of any of the foregoing, any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment arising under the Purchase Agreement or arising by reason of the closing of the transactions contemplated under the Purchase Agreement. Each non-debtor party to an Assumed Contract is forever barred, estopped and permanently

enjoined from asserting against the Debtors, the Reorganized Truvo Group or the property of any of the foregoing, any default existing as of the Effective Date.

44.     <u>Deemed Consent to Assumption and Assignment</u>.  Any non-debtor counterparty to a rejected contract who (a) failed to file with the Court an objection to the rejection of such contract prior to the Confirmation Objection Deadline or the New Confirmation Objection Deadline, (b) withdrew such an objection at or prior to the Confirmation Hearing, or (c) otherwise resolved such objection at or prior to the Confirmation Hearing, shall be deemed to consent to such rejection.

45.     <u>Securities to Be Issued Pursuant to the Plan</u>.  On the Effective Date, Newco, Holdco, Equityco, PIKco and TAC (acting as a proxy under the Plan) are authorized to and shall distribute, or cause to be distributed in accordance with the transactions set out in Section 5.3 of the Plan, the Plan Securities, and any and all other securities, notes, stock, instruments, certificates and other documents or agreements required to be issued, executed or delivered pursuant to the Plan, in each case without further notice to or order of this Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.   Pursuant to section 1142(b) of the Bankruptcy Code and without further notice to or action by this Court, or further act or action under applicable law, regulation, order or rule or vote, consent authorization or approval of any Persons, the Reorganized Truvo Group is authorized to perform all tasks necessary and to execute and deliver all documents, agreements and instruments necessary or appropriate to issue the Plan Securities and the New Securities and Documents.

46.     <u>Exemption From Securities Laws</u>.  To the extent that the Plan Securities constitute "securities," as defined in section 2(a)(1) of the Securities Act, and except with respect

to any entity that is an underwriter as defined in section 2(a)(11) of the Securities Act and in subsection (b) of section 1145 of the Bankruptcy Code, the issuance of the Plan Securities (and the issuance of Equityco Ordinary Shares and Holdco Ordinary Shares upon the exercise of the Equityco Warrants and the Holdco Warrants, respectively) and the exchange of the Plan Securities for the Senior Debt Claims, the HY Notes Claims, and the PIK Debt Claims, as applicable, in each case shall be exempt from registration under U.S. state and U.S. federal securities laws pursuant to section 1145(a)(1) of the Bankruptcy Code.

47. Specifically,

(i) the issuance by Newco of the Newco Ordinary Shares to the Senior Lenders in exchange for a portion of the Senior Lenders' Senior Debt Claims against TAC satisfies the requirements of section 1145(a)(1) of the Bankruptcy Code because Newco is, and will be at the time of such issuance, an affiliate of a debtor and the Senior Debt Claims against TAC are claims against a debtor. The issuance by Newco of the New Bank Debt to the Senior Lenders (pursuant to the Debt Acknowledgement Obligation) in exchange for a portion of the Senior Lenders' Senior Debt Claims against TAC satisfies the requirements of section 1145(a)(1) of the Bankruptcy Code because Newco is, and will be at the time of such issuance, an affiliate of the debtor and the Senior Lenders' Senior Debt Claims against TAC are claims against a debtor.

(ii) The issuances by Holdco of

(a) the Holdco Ordinary Shares and MIP Holdco Warrants to the Senior Lenders in exchange for the Senior Lenders' Newco Ordinary Shares and

(b) the Junior Creditor Holdco Warrants for the benefit of the HY Noteholders and PIK Lenders in exchange for their Claims

satisfy the requirements of section 1145(a)(1) of the Bankruptcy Code because Holdco is, and will be at the time of such issuance, an affiliate of a debtor, the Senior Lenders' Newco Ordinary

43

Shares are interests in an affiliate of a debtor and the Claims of the HY Noteholders and PIK Lenders are claims against a debtor.

(iii)    The issuances by Equityco of

(a)    the Equityco Distribution to certain Senior Lenders in exchange for their Holdco Ordinary Shares,

(b)    the Junior Creditor Equityco Warrants to the HY Noteholders and the PIK Lenders in exchange for their Junior Creditor Holdco Warrants, and

(c)    the MIP Equityco Warrants to certain Senior Lenders in exchange for their MIP Holdco Warrants

satisfy the requirements of section 1145(a)(1) of the Bankruptcy Code because Equityco is, and will be at the time of such issuance, an affiliate of a debtor and

(A) the Holdco Ordinary Shares are interests in an affiliate of the debtor,

(B) the Junior Creditor Holdco Warrants are interests in an affiliate of the debtor, and

(C) the MIP Holdco Warrants are interests in an affiliate of the debtor.

(iv)    The issuance by PIKco of the PIKco Distribution to certain Senior Lenders in exchange for their Holdco Ordinary Shares satisfies the requirements of section 1145(a)(1) of the Bankruptcy Code because PIKco is, and will be at the time of such issuance, an affiliate of the debtor and the Holdco Ordinary Shares are interests in an affiliate of the debtor.

(v)    Pursuant to, and to the fullest extent permitted by, section 1145 of the Bankruptcy Code, the resale of any of the Plan Securities shall be exempt from Section 5 of the Securities Act and any state or local law requiring registration prior to the offering, issuance, distribution, or sale of the Plan Securities.  In addition, if the Junior Creditor Equityco Warrants are exercised, the resulting issuance of Equityco ordinary shares shall be exempt from

registration under state and federal securities laws pursuant to section 1145(a)(2) of the Bankruptcy Code.

(vi)    Notwithstanding the foregoing, the (i) transfer of MIP Equityco Ordinary Shares to MIPco (and the subsequent transfer of such MIP Equityco Ordinary Shares to Manco), (ii) the transfer of MIP Equityco Warrants to MIPco, and (iii) the exercise of the Holdco Warrants by Equityco shall be effected in transactions not subject to, or exempt from, the registration requirements of the Securities Act.  The Disclosure Statement provides that the issuance of the Plan Securities (and the issuance of Equityco Ordinary Shares and Holdco Ordinary Shares upon the exercise of the Equityco Warrants and the Holdco Warrants, respectively) and the exchange of Plan Securities for the Senior Debt Claims, the HY Notes Claims and the PIK Debt Claims, as applicable, fall outside the scope of, or are otherwise exempt pursuant to, Directive 2003/71/EC of the European Parliament and of the Council of November 4, 2003 and any relevant measures implementing such directive in each member state of the European Economic Area.

48.    <u>Cancellation of Notes, Instruments, and Debentures</u>.  In accordance with Section 5.12 of the Plan, on the Effective Date and upon consummation of the transactions contemplated by the Plan, except as otherwise provided in the Plan or this Confirmation Order, (a) any notes, bonds, indentures, or other instruments or documents evidencing or creating any of the following Claims, Liens or Equity Interests that are Impaired under the Plan shall be deemed cancelled and extinguished, including without limitation: (i) Senior Debt Claims against the Debtors; (ii) HY Notes Claims against the Debtors; (iii) PIK Debt Claims; (iv) Old Equity Interests in Truvo Parent; and (v) Intercompany Equity Interests in the Truvo Parent, PIK Borrower, HY Notes Issuer and, as of the end of the Effective Date, TUSA; and (b) the

obligations of the Debtors under any such agreements, documents, indentures, or certificates of designation governing the Senior Loans, HY Notes, PIK Loans and any other notes, bonds, indentures or other instruments or documents evidencing or creating any indebtedness or obligations of the Debtors that are Impaired under the Plan shall be, and are hereby, discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers or directors of the Debtors or Reorganized Truvo Group or by any other Person; provided, however, that the foregoing shall not (x) effect a discharge of the obligations under the Plan of any of the Debtors, Reorganized Truvo, the Disbursing Agent, or any other Person or Entity or (y) impair the ability of any Person or Entity to enforce its rights under the Plan or this Confirmation Order.

49.     Surrender of Instruments.  Unless otherwise agreed by the HY Indenture Trustee, on the Effective Date, each of DTC, Euroclear and Clearstream, as applicable, shall surrender for cancellation to the HY Indenture Trustee the certificates for the HY Notes that are held by it.  Notwithstanding anything to the contrary in this Confirmation Order, the Senior Facility Agreement, the HY Indenture and the PIK Loan Agreement shall continue in effect solely for the purposes of:  (i) allowing Senior Lenders (as of the Distribution Record Date and Newco as transferee of the Senior Debt Claims against TAC), HY Noteholders, and PIK Lenders to receive distributions under the Plan and (ii) allowing and preserving the rights of the Senior Agent, HY Indenture Trustee (including, without limitation, its rights, if any, pursuant to the HY Indenture to a charging lien against any distributions to be made to the Holders of Allowed HY Notes Claims pursuant to the Plan) and PIK Agent to make distributions in satisfaction of Allowed Senior Debt Claims, Allowed HY Notes Claims and Allowed PIK Debt Claims.

50. <u>General Authorizations</u>.  The Debtors and the Reorganized Truvo Group, and their respective officers, employees, agents or attorneys, as applicable, are authorized and empowered pursuant to sections 105 and 1142(b) of the Bankruptcy Code and any applicable state law to take, without further order of the Court, subject to the terms of the Plan, (a) any and all actions necessary or appropriate to implement and consummate the contracts, instruments, releases, leases, indentures and other agreements or documents contemplated by or described in, the Plan or this Confirmation Order, and (b) further corporate action or further action by (or vote of) directors, partners or stockholders of the Debtors or the Reorganized Truvo Group, including, without limitation, (i) negotiation, execution and delivery of such other and further documents as may be necessary or appropriate to implement and consummate the Purchase Agreement, the TAC Purchase Agreement, the Financial Restructuring, the Restructuring Transactions, the Plan or the Amended Plan Supplement, (ii) performance of their respective obligations under the Purchase Agreement, the TAC Purchase Agreement, the Financial Restructuring, the Restructuring Transactions, the Plan or the Amended Plan Supplement, (iii) performance of all further actions for the purpose of assembling, transferring, granting or conveying, or reducing to possession, any and all of the TUSA and TAC Equity Interests, or as may be necessary to ensure the performance of the obligations contemplated by the Purchase Agreement, the TAC Purchase Agreement, the Financial Restructuring, the Restructuring Transactions, the Plan, the Amended Plan Supplement or this Confirmation Order, (iv) issuance, execution, delivery, filing or recording, as appropriate, the documents evidencing and consummating the Purchase Agreement, the TAC Purchase Agreement, the Financial Restructuring, the Restructuring Transactions, the Plan, or the Amended Plan Supplement, (v) issuance, execution, delivery, filing or recording, as appropriate, such other contracts, instruments, releases, indentures, mortgages,

deeds, bills of sale, assignments, leases, or other agreements or documents in connection with the

Purchase Agreement, the TAC Purchase Agreement, the Financial Restructuring, the

Restructuring Transactions, the Plan or the Amended Plan Supplement, (vi) performance of such

other acts and execution and delivery of such other documents, as are consistent with, and

necessary or appropriate to implement, effectuate and consummate the intent of the parties in

entering into the Purchase Agreement, the TAC Purchase Agreement, the Financial

Restructuring, the Restructuring Transactions, the Amended Plan Supplement and the Plan,

including making any non-material modifications, amendments or corrections of those

agreements that may be required so that they more fully reflect such intent, (vii) payment of any

state or local franchise taxes owed by any of the Debtors to the extent such payment is

reasonably necessary to effectuate the transactions contemplated by the Purchase Agreement, the

Financial Restructuring, the Restructuring Transactions, the Plan and the Amended Plan

Supplement, and (viii) subject to the express provisions of this Confirmation Order, the making

of such non-material modifications to the exhibits comprising the Amended Plan Supplement as

in their reasonable business judgment prior to the Effective Date may be necessary (provided that

such non-material modifications are filed with the Court).

      51.     Reorganized Truvo is authorized and empowered (i) to become an obligor

under the New Senior Credit Agreement and any other documents related thereto, and the New

Intercreditor Agreement and (ii) to enter into certain Restructuring Transactions as described in

Section 5.6(b) of the Plan.

      52.     The secretary of each of the Debtors shall be, and hereby is, authorized to

certify or attest to any of the foregoing actions (but no such certification or attestation shall be

required to make any such action valid, binding, and enforceable).  Without limiting the

generality of the foregoing, this Confirmation Order shall constitute all approvals and consents, if any, required by the applicable state corporation laws, and all other applicable business corporation, trust, and other laws of the applicable governmental units with respect to the implementation and consummation of the Purchase Agreement, the TAC Purchase Agreement, the Financial Restructuring, the Restructuring Transactions, the Plan, the Amended Plan Supplement and this Confirmation Order and the transactions contemplated thereby and hereby. Such actions are approved in all respects and shall be deemed to have occurred and be effective on or after the Effective Date, as applicable.

53. Further, pursuant to section 1142 of the Bankruptcy Code and in accordance with this Confirmation Order, the Debtors and any other necessary party (but in the case of the Senior Agent and the Security Agent, subject to the satisfaction or waiver of the Senior Agent Conditions Precedent and Security Agent Conditions Precedent, as applicable), including without limitation, any Holder of Senior Debt Claims (as of the Distribution Record Date and the Effective Date, as applicable, or any other date specified), HY Notes Claims or PIK Debt Claims, shall execute, deliver and join in the execution or delivery (as applicable) of any instrument, document or agreement required to effect a transfer of property, a satisfaction of a Lien or a release of a Claim dealt with by the Plan, including the transactions set out in Section 5.3 of the Plan and to perform any other act, including without limitation the execution of Mandatory Transfer Certificates and the execution of documents necessary to effectuate the New Senior Credit Agreement, the New PIK Agreement, New Intercreditor Agreement, the Shareholders' Agreement and all other documents set forth or contemplated in the Plan or Amended Plan Supplement, that is necessary for the consummation of the Plan and the transactions contemplated therein.

54.    Binding Effect.  On and after the Effective Date, the provisions of the Plan shall bind all present and former Holders of Claims against and Equity Interest in any Debtor and its respective Related Persons, regardless of whether any such Holder of a Claim or Equity Interest has voted or failed to vote to Accept or reject the Plan.  The Holders of Liens against any of the Debtors or their properties satisfied, discharged and released under the Plan shall execute any and all documentation reasonably requested by the Debtors or the Reorganized Truvo Group evidencing the satisfaction, discharge and release of such Liens and such Liens shall be deemed satisfied, discharged and released by operation of this Confirmation Order; provided, however, to the extent a Holder of Liens against any of the Debtors or their properties satisfied, discharged and released under the Plan fails to execute such documentation, the Debtors or the Reorganized Truvo Group are authorized to file, register or otherwise record a certified copy of this Confirmation Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the satisfaction, discharge and release of such Liens.

55.    This Confirmation Order shall be binding upon and shall govern the acts of all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, local, and foreign officials, and all other Persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the TUSA Equity Interests.

56.    Compromise of Controversies.  In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a

good faith compromise and settlement of all Claims and controversies resolved under the Plan, and entry of this Confirmation Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019 subject to Section 10.4 of the Plan.

57.     <u>Reorganized Truvo Group</u>.  On and after the Effective Date, each member of the Reorganized Truvo Group may operate its business and may use, acquire, and dispose of property and compromise or settle any Claims against the Debtors without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by the Plan or this Confirmation Order.  Without limiting the foregoing, each member of the Reorganized Truvo Group may pay the charges that they incur on or after the Effective Date for Professionals' fees, disbursements, expenses or related support services without application or notice to or order of the Bankruptcy Court.

58.     <u>Objections to Administrative Expense Claims</u>.  Notwithstanding anything to the contrary in the Plan or herein, as provided in Sections 3.1 and 12.4 of the Plan, the Debtors and Reorganized Truvo shall have thirty (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Expense Claims Bar Date to review and File objections to Administrative Expense Claims, if necessary; <u>provided</u>, <u>however</u>, objections to any Substantial Contribution Claims must be Filed and served on Reorganized Truvo and its counsel; Cadwalader, Wickersham & Taft LLP, One World Financial Center, New York, New York 10281, Attention: Gregory M. Petrick, Esq.; the Office of the United States Trustee (U.S. Department of Justice, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attention: Brian S. Masumoto, Esq.); and the requesting party no later than [fifteen (15)

days] after the date on which an application for final allowance of such Substantial Contribution

Claims, as the case may be, was Filed and served.

59. <u>Final Fee Applications</u>. All final fee applications for Professional Fees

incurred prior to the Effective Date and for services rendered during or in connection with the

Chapter 11 Cases shall be Filed with the Bankruptcy Court and served on Reorganized Truvo

and its counsel; Cadwalader, Wickersham & Taft LLP, One World Financial Center, New York,

New York 10281, Attention: Gregory M. Petrick, Esq.; and the Office of the United States

Trustee (U.S. Department of Justice, 33 Whitehall Street, 21st Floor, New York, New York

10004, Attention: Brian S. Masumoto, Esq.) no later than ten (10) days after the Effective Date.

Objections to any Professional Fees Claims must be Filed and served on Reorganized Truvo and

its counsel; Cadwalader, Wickersham & Taft LLP, One World Financial Center, New York,

New York 10281, Attention: Gregory M. Petrick, Esq.; the Office of the United States Trustee;

and the requesting party no later than fifteen (15) days after the date on which an application for

final allowance of such Professional Fees Claims was Filed or served. A hearing on such final

fee applications shall be held on <u>December 29, 2010 at 10:00 a.m.</u> (New York city time) or as

soon thereafter as counsel may be heard.

60. <u>Conditions to the Effective Date</u>. The Plan shall not become effective unless

and until the conditions set forth in Section 9.3 of the Plan have been satisfied or waived

pursuant to Section 9.4 of the Plan. If, following the entry of this Confirmation Order, (i) the

Effective Date does not occur on or before December 31, 2010, or such later date as is agreed

upon in writing by the Debtors and the Majority Supporting Senior Lenders, and (ii) the Plan

Support Agreement or the Plan Settlement Agreement has terminated in accordance with its

terms, then the Confirmation Order will be deemed vacated by this Court without further notice

or order.  If the Confirmation Order is vacated pursuant to the foregoing, (a) the Debtors shall File a notice to this effect with this Court, (b) the Plan shall be null and void in all respects, (c) any settlement of Claims provided for by this Confirmation Order or the Plan shall be null and void without further order of this Court, and (d) the time within which the Debtors may assume, assume and assign or reject all executory contracts and unexpired leases shall be extended for a period of sixty (60) days after the date this Confirmation Order is vacated; provided, however, that the Debtors retain their rights to seek further extensions of such deadline in accordance with, and subject to, section 365 of the Bankruptcy Code, and nothing contained in this Confirmation Order, the Plan or Disclosure Statement shall (x) constitute a waiver or release of any Claims, Equity Interests, or Causes of Action, (y) prejudice in any manner the rights of any Debtor or any other Entity or (z) constitute an admission, acknowledgement, offer or undertaking of any sort by any Debtor or any other Person or Entity.

61.     Retention of Jurisdiction.  The Court will retain jurisdiction over matters set forth in Article XI of the Plan and herein.

62.     Modification of Plan.  As set forth in Section 12.6 of the Plan, subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, the Debtors reserve the right to alter, amend or modify the Plan (including, for the avoidance of doubt, any Exhibits or Supplement thereto), with the written consent of the CoComm, the Elliott Lender, and solely with respect to the treatment provided to the HY Noteholder Classes and Classes of unsecured Claims, the Creditors Committee, which consent (in each case) shall not be unreasonably withheld, at any time prior to or after the Confirmation Date but prior to the substantial consummation of the Plan.  A Holder of a Claim that has voted to accept (or otherwise been deemed to have accepted) the Plan shall be deemed to

have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.  An adjustment of the Purchase Price with respect to the TUSA Sale in an amount of no more than 10% of the Purchase Price to reflect the fair market value certification provided to the Security Agent in accordance with Clause 22.4 of the Intercreditor Agreement shall not be deemed to be a material modification of the Plan and shall not require further order of the Court, provided that the Debtors file a notice of such adjustment on or prior to the Effective Date.

63.      Severability.  This Confirmation Order will constitute a judicial interpretation that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

64.      Provisions of Plan and Order Nonseverable and Mutually Dependent.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

65.      Exemptions from Taxation.  Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, Transfer or exchange (or deemed issuance, Transfer or exchange) of the Plan Securities; (b) the consummation of the TUSA Sale; (c) the creation of any mortgage, deed of trust, Lien, pledge or other security interest; (d) the making or assignment of any lease or sublease; or (e) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan (including, without limitation, any merger agreements, agreements of consolidation, restructuring, disposition, liquidation, dissolution, deeds, bills of sale and transfers of tangible property) will not be subject to any stamp tax, recording tax, personal property tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation such taxes on prime contracting and owner-builder

sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders) or other similar taxes in the United States. Unless the Court orders otherwise, all sales, transfers and assignments of owned and leased property approved by the Court on or prior to the Effective Date shall be deemed to have been in furtherance of or in connection with the Plan, and the appropriate state and local governmental officials or agents and shall be, and hereby are, ordered and directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Notice of entry of this Confirmation Order in the form approved by the Court as set out in Exhibit B hereto (x) shall have the effect of an order of the Court, (y) shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers, and (z) shall be a recordable instrument notwithstanding any contrary provision of applicable nonbankruptcy law.

66.     References to Plan Provisions. The failure specifically to include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed, enforceable and binding in its entirety, as modified by this Confirmation Order.

67.     Confirmation Order Controlling. If there is any direct conflict between the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

68.     Reversal. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity or enforceability of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors'

receipt of written notice of such order. Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan and all related documents or any amendments or modifications thereto.

69.     <u>Substantial Consummation</u>.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code as to all Debtors other than TAC.

70.     <u>No Stay of Confirmation Order</u>.  Pursuant to Bankruptcy Rule 3020(e), this Confirmation Order shall not be stayed and shall be effective upon entry on the docket of this Court.

71.     <u>Applicable Non-Bankruptcy Law</u>.  To the extent provided in sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

72.    <u>Post-Confirmation Notices</u>.  The form of the Notice of Entry of Confirmation Order, substantially in the form attached hereto as <u>Exhibit B</u> is approved.  The Debtors or the Reorganized Truvo Group shall serve notice of entry of this Confirmation Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c) upon all Holders of Claims and Equity Interests of the Debtors, the U.S. Trustee, and on the parties identified on the Special Service List no later than ten (10) Business Days after the Confirmation Date.

Dated: New York, New York
       October 26, 2010

                                    <u>**s/Arthur J. Gonzalez**</u>
                                    CHIEF UNITED STATES BANKRUPTCY JUDGE